262 So.2d 745

**STATE SECURITY LIFE INSURANCE CO.,** a Corp. (a/k/a Great States Life Insurance Co. of Quincy, Illinois, a Corp.)

v.

Marvin **HENSON,** Jr.

**6 Div. 823.**

Supreme Court of Alabama.

May 18, 1972.

Rehearing Denied June 15, 1972.

George R. Stuart, III, William M. Acker, Jr., and A. Lamar Reid, Birmingham, for appellant.

J. Vernon Patrick, Jr., Chervis Isom, Marvin Cherner, James W. May, Jr., Birmingham, for appellee.

COLEMAN, Justice.

The defendant appeals from a judgment granting plaintiff's motion for new trial in an action for deceit.

The plaintiff is the appellee, Marvin Henson, Jr. The defendant is Great States

Life Insurance Company of Quincy, Illinois, a corporation. Defendant is also referred to as State Security Life Insurance Company, a corporation. The matters herein mentioned allegedly occurred during the operation of Great States prior to merger with State Security.

Defendant sold four life insurance policies to plaintiff, two in September, 1962, and two in February, 1963. The complaint contains four counts relating to the sale of each policy. There are four sets of counts, one set for each policy. Except for names, dates, and other details, the allegations in each set of counts are the same, and we discuss only one set of counts relating to the sale of one policy. The same considerations and result apply to the sale of all policies.

The original complaint was filed August 2, 1968. In general effect, plaintiff alleges that defendant, by making false representations deceived plaintiff and induced him to purchase the policy and pay money for the same to defendant. In Counts II, III, and V, plaintiff alleges that defendant made false representations to plaintiff on or about September 24, 1962, and thereby induced plaintiff to purchase the policy. In Count IV, plaintiff alleges that on or about September 24, 1962, defendant embarked on a fraudulent scheme to induce plaintiff and others to purchase the policy.

Defendant's demurrer was overruled and defendant pleaded in short by consent the general issue with leave, etc. Defendant filed also pleas of the statute of limitations of one year averring that the representations allegedly made by defendant occurred more than one year prior to the filing of suit, and that the cause is barred by Title 7, § 26, Code 1940, there being no factual allegations bringing the cause within exceptions provided by Title 7, § 42, Code 1940.

Plaintiff filed a replication alleging that plaintiff did not discover the deceit until, to wit, September, 1967. We do not consider the sufficiency of the replication.

The trial was by jury. After the parties rested, the court charged the jury as follows:

". . . . This case is based upon fraud and deceipt (sic) and the statute says—this is what I am reading to you, now, from Title 7 of the Code of Alabama of 1940, recompiled in 1958, Section 42. 'In an action seeking relief on the grounds of fraud—' that is what we are dealing with in this case '—where the statute has created the bar, the cause of action must not be considered as having accrued until the discovery by the given party of the facts constituting the fraud, after which he must have one year within which to prosecute his suit.' Ladies and gentlemen, this Court is holding that this matter of law, that this law suit was not brought within one year and therefore, ladies and gentlemen, I charge you that you cannot find for the plaintiff and against the defendant in this case. . . . ."

Verdict was for defendant, and judgment was rendered on the verdict.

Plaintiff filed motion for new trial on the ground that the court erred in giving the affirmative charge for defendant for that there was at least a scintilla of evidence to show that plaintiff had not discovered the fraud within one year prior to filing suit and that plaintiff could not have discovered the same within said period of time by the exercise of reasonable diligence.

The error assigned is that the court erred in granting the motion. The parties agree that the motion was granted on the aforesaid ground. The question for decision is whether there is a scintilla of evidence to support plaintiff's replication.

In making this determination the evidence must be viewed in its light most favorable to plaintiff. Robinson v. Morrison, 272 Ala. 552, 133 So.2d 230, and authorities there cited.

"In Alabama the rule in civil cases is that the case must go to the jury if the evidence or the reasonable inferences arising therefrom furnish 'a mere "gleam," "glimmer," "spark," "the least particle," the "smallest trace", "a scintilla" ' in support of the theory of the defendant's liability. Ex parte Grimmett, 228 Ala. 1, 152 So. 263, 264; Alabama Great Southern R. Co. v. Bishop, 265 Ala. 118, 89 So.2d 738, 64 A.L.R.2d 1190." Louis Pizitz Dry Goods Company v. Harris, 270 Ala. 390, 392, 118 So. 2d 727, 730.

"It is only when the evidence is without conflict and establishes the requesting party's right to recovery that the jury may be given affirmative instructions. Watts v. Metropolitan Life Ins. Co., 211 Ala. 404, 100 So. 812; McMillan v. Aiken, 205 Ala. 35, 88 So. 135. And this is true if the conflict in evidence is presented in the testimony of the same witness, or that of several witnesses for the same party or the different parties to the suit. Jones v. Bell, 201 Ala. 336, 77 So. 998." M. Frank Sons & Co. v. Davis, 214 Ala. 601, 108 So. 575.

■ The burden of allegation and proof as to fraud and its discovery by plaintiff within one year rested upon the plaintiff. Maxwell v. Lauderdale, 200 Ala. 648, 77 So. 22.

In Count II, plaintiff claims damages for deceit in the sale of a contract issued by defendant, viz., defendant's " 'Variable Investment Plan,' " Policy No. 29173, and avers "that the defendant represented to the plaintiff on or about September 24, 1962, that the said contract was an investment on which the plaintiff would realize dividends which within three years would be sufficient to cover 'premiums' payable by the plaintiff to the defendant . . .," and that defendant, at the time of the sale of the contract, knew that said representation was untrue and was not based on actual experience or other facts which might furnish a reasonable basis for said representation.

In Count III, plaintiff alleged that defendant made the same false representation as alleged in Count II and wilfully concealed the fact that defendant had no records of operating profits or other reasonable basis in fact for making said representation concerning dividends, and, at the time of sale, defendant knew that said representation was untrue and not based on actual experience or other fact which might furnish a reasonable basis for said representation, and knew that the facts concealed should have been disclosed to plaintiff in view of said representations.

In Count V, plaintiff alleges ". . . . that the defendant represented to plaintiff on or about September 24, 1962, that 'dividends' would be paid on such contract by defendant to plaintiff, if plaintiff purchased said contract." Plaintiff alleged that defendant knew that "said representation was false in that the 'dividends' payable on such contract were in fact a rebate of a portion of the premium payable by purchasers of such contracts to the defendant."

Among other things, plaintiff testified that two men representing defendant came to see plaintiff and his wife in September, 1962, and:

"A They just said, they told me, they said, 'Marvin, we are with a new company. We have got a one fine deal going.' "

Plaintiff further testified:

"Q . . . . What did they say about earnings to you, your investment, if anything?

"A They said that I could make up as much as forty percent interest on it. They told what material they had there and they said that we had came to show it to you. They had all kinds of material. They had papers and charts and I told them that if this was some kind of

insurance—he said no, this thing is guaranteed. They have got it set up so that you can't lose your money. There is no way you can lose your money. I told them if it's something, some kind of insurance I don't need it; I work with U. S. Steel and we have good insurance and he said this is not insurance, this a profit sharing deal with your money, making money."

Plaintiff testified that about the third year he got in touch with one of the men, Mr. Strength, that plaintiff was not satisfied with "the interest" that we had gotten and asked him to look at it because he had promised us more; that plaintiff paid about the same amount in installments each year and it never did decrease.

Plaintiff testified that he went to a meeting with the staff of the State Insurance Department in Montgomery subsequent to August 3, 1967, and at that meeting he first learned that the contracts he had purchased were insurance policies.

Insurance Investigator Easterwood, employed by the State, testified that at some time subsequent to August 3, 1967, plaintiff came to the office of the witness in Montgomery and:

"A I don't think that Mr. Henson knew that he had just a life insurance policy participant when he came into my office."

Plaintiff testified on cross-examination:

"Q And you also knew what was on those policies in 1963? And you also knew how much payment was due in?

"A Yes, sir."

Defendant introduced into evidence a letter dated July 11, 1967, and stamped received in the State Department of Insurance the next day. The letter recites:

"Dear Mr. Houseal,

"I'm writing to you in regard to four Life Insurance Policy insured to me Sept. 24, 1962 & Feb. 8, 1963. Total payments as of now 9496.15.

"Policy No. 28783 #28787 #29173 $29174

"Great State Life In-            President
surance Co.                      L. Jarvill
301 -Oak Street,
P. O. Box 809
Quincy, Illinois 62302

"Sir: This was sold to me & my Fraternal Bros & relatives by a member of the Fraternal Order of Eagle's, Pratt City by false pretenses.

"This is the sale pitch used: We are buying units of stock through the Life Insurance Co. The first payment would have to be in full, second payment half the amount the third year break even if the coupons are left in. The third year the money we had invested could be drawn out plus interest & dividends. We just couldn't loose. I excepted this until I received my first two policy, which read Life Insurance. Oh, it was said, not to worry you can't loose on this policy if you don't cash the coupons which is attach(ed) to the back of the policy. They insisted we were the stock holders with the Co. They continue talk they have a certain amount to sell in the South & weren't allow(ed) anymore sales of this stock. The false sales pitch got so great as to how much money we were about to make (as high as 40%) that they end(ed) selling me two more units. (four in all). The first, second, third, fourth & fifth statement from the home office wasn't what was sold to us. We had to send it's full amount each year. Each year we send for the salesman (Johnny Strength; Manager: The original salesman is no longer with the Co. He continue(s) the same false story wait one more year & you'll get everything you have in it plus coupons, interest & dividends. This the the fifth year & I can't get what I have in it. I could take it at a tremendous loss.

"The Better Business Bureau ask(ed) me to write you in a hurry. He would try to help after he knows what you can do.

"You can call me collect: 7983089 - Mr or Mrs Marvin Henson."

Plaintiff testified that his wife wrote the letter and: "She signed it Mrs. & Mr. Henson. She told me what she put in there. So —"

■ Plaintiff's testimony, although contradicted, that he first learned when he went to Montgomery that he had purchased insurance, and Easterwood's testimony, provide a scintilla of evidence tending to support an inference that plaintiff did first have knowledge of the fraud within one year prior to August 2, 1968. In reaching this conclusion we have considered the evidence admitted by the court. We do not have before us any question whether evidence was admissible and do not decide whether any evidence was or was not properly admitted.

There remains, however, the question whether defendant was entitled to the affirmative charge for the reason that the evidence shows without conflict that more than one year prior to filing suit plaintiff had knowledge of facts, sufficient to put a prudent man on inquiry, which in the exercise of proper prudence and diligence would enable him to learn of the fraud.

"It is also equally well-settled law in this state that whatever is sufficient to put a party on inquiry is enough to charge him with notice. Means of knowledge may be equivalent to knowledge. Whatever is sufficient to put one on his guard, and call for inquiry, is notice of everything to which the inquiry would lead. (Citations Omitted)" Gamble v. Black Warrior Coal Co., 172 Ala. 669, 672, 673, 55 So. 190.

"The statute referred to does not require actual notice, since a fraud is discovered within the contemplation of the law when it is readily discoverable or when a party is put upon notice thereof. Ivy v. Hood, 202 Ala. 121, 79 S. 587; . . . .

"The provisions of Code, § 4852, are construed to mean that mere ignorance on the part of the alleged defrauded party is not sufficient to prevent the running of the statute, but to mean ignorance that is superinduced by the fraud of the respondent in the form of active concealment, conduct calculated to mislead, or to prevent inquiry and lull into repose. Ivy v. Hood, supra; Van Ingin v. Duffin, 158 Ala. 318, 48 So. 507, 132 Am.St.Rep. 29. . . . .

". . . . . . . . . .

"When a party relies on his ignorance of facts material to his right as an excuse for his laches and delay in asserting them, he must show by distinct averments why he was so long ignorant, and acquit himself of all knowledge of facts which would put him on inquiry, and must show how and when he first acquired a knowledge of the facts. James v. James, 55 Ala. 525. This principle was announced in Scruggs v. Decatur Mineral & Land Co., 86 Ala. 173, 5 So. 440, . . . ." Peters Mineral Land Co. v. Hooper, 208 Ala. 324, 329, 330, 94 So. 606, 611.

In a more recent case, this court quoted at length from Peters Mineral Land Co. v. Hooper, supra, and said:

"If the appellant would avoid the bar of the statute of limitations and laches, he must acquit himself of all knowledge of facts which would put him on inquiry and must show how and when he first acquired knowledge of the facts. . . . ." Fletcher v. First Nat. Bank of Opelika, 244 Ala. 98, 105, 11 So.2d 854, 860.

See also:

"It is a well-recognized principle that notice of facts which ought to excite inquiry and which, if pursued, would lead

to knowledge of other facts, operates as notice of those facts. (Citations Omitted)" Williams v. Dan River Mills, Inc., 286 Ala. 703, 706, 246 So.2d 431, 433.

The cause of action, as alleged in Counts II, III, and V, accrued on or about September 24, 1962. One year subsequent to that date had expired long before the instant suit was filed August 2, 1968. Plaintiff seeks to bring himself within the exception provided by § 42, Title 7, Code 1940. The evidence is without conflict that more than one year prior to August 2, 1968, plaintiff possessed knowledge of facts which would lead a reasonable man to make diligent inquiry. The letter of July 11, 1967, quoted above is itself an act making inquiry. The letter shows that on the date of the letter plaintiff had actual knowledge of facts which on inquiry led to knowledge that the representations allegedly made by defendant were false.

In Counts II and III, the false representation is alleged to be that the contract was an investment, and that within three years plaintiff would realize dividends sufficient to pay the premium. The letter refers to four "Life Insurance Policy"; the writer states that the policy reads "Life Insurance"; the letter says the policies were sold to plaintiff by "false pretenses"; that the sales pitch was false; each year the salesman continues the same "false story"; and plaintiff is faced with a loss on his investment. It seems inescapable that knowledge of such facts would provoke a reasonable man to make inquiry, as plaintiff was so provoked.

As to Count V, the false representation is alleged to be that " 'dividends' " would be paid on such contract. If the evidence did show that no " 'dividends' " at all had been paid or credited to plaintiff's account; which is not the fact; plaintiff, nevertheless, has wholly failed to show that defendant represented to plaintiff that the contract would pay " 'dividends.' " The only evidence we have found is directly to the contrary. Plaintiff testified:

"Q Was the word, 'dividend' used by Mr. Strength or Mr. Lantrup?

"MR. STUART: I object to leading the witness.

"MR. MAY: There is no other way I can ask him this question.

"MR. STUART: You can ask him what he said.

"THE COURT: Well, I think it is leading.

"Q Did Mr. Strength or Mr. Lantrup describe to you how the profits that you already testified, that they said that you were going to—

"A No, sir, they said interest. They didn't say dividend. They said interest."

As to Counts II, III, and V, plaintiff failed to bring himself within the exception provided by § 42, Title 7; See Van Ingin v. Duffin, 158 Ala. 318, 48 So. 507; and defendant was entitled to the affirmative charge as to those three counts.

■ The circumstances charging deceit in Count IV are different. The fraud there charged is more complicated than the fraud charged in the other three counts. Plaintiff alleges in Count IV that defendant in 1962 entered upon the execution of a scheme to cause plaintiff to purchase the policies by misrepresenting the amount or percentage of the profits which would be paid to plaintiff; that defendant adopted a dividend scale and paid dividends during the early years so as to lull and deceive plaintiff and intended "from the outset" to reduce the dividend payout at a later date; that in 1962 defendant represented that policyholders, including plaintiff, would receive 90% of the profits and the annual return within three years would be sufficient to pay the annual premium, and after three years would exceed the premium; that in 1964, 1965, 1966, and 1967, defendant represented to plaintiff that dividends had been credited to plaintiff's account; and that in 1967, defendant reduced the

dividend payout and adopted a scale designed to permit defendant to realize 50% of the profits attributable to the policy.

The evidence does not persuade us that plaintiff had knowledge of the scheme to reduce the dividend scale which defendant allegedly followed by paying dividends in the early years and reducing the dividend in later years. The letter of July 11, 1967, does not suggest to us that plaintiff had knowledge that defendant was following a plan to reduce the dividend in the later years.

Plaintiff did testify that about the third year he was not satisfied with the "interest" he received and that Mr. Strength, through whom he had bought the policies, had "promised us more"; that the installment payments did decrease but not as much as 25%; that he never received any cash dividends; and that he received a statement each year. Plaintiff's Exhibit 8 appears to show the form of the statements. Apparently the statement shows the Total Coupon and Interest Deposits on the policy, and other information. Plaintiff also received other statements from the company, some showing the cash value. Plaintiff testified that he was not told that the dividends would be reduced on these policies, that he knows now that the dividends were reduced on these policies in 1967 by about half.

Plaintiff's Exhibit 15 is a letter dated June 19, 1962, from an actuary to the treasurer of defendant. To the letter is attached a dividend scale for "VIP DIVIDENDS." The writer suggests that the company's experience with this contract be examined in the next 2 or 3 years and the dividend scale modified accordingly. The writer states that the company will not lose anything by issuing the policy but will not make anything either, and the company is entitled to its fair share of profits.

Plaintiff's Exhibit 22 is a letter dated March 16, 1967, from the actuary to defendant's bookkeeper. The letter refers to VIP Dividends. The writer states that dividends for the early years were estimated rather high to attract new policyholders; that experience and costs for this block of business have not been developed and a long range dividend scale is possible; that the lower scale may be conservative at first, but this is partially due to the coupons which are in a sense guaranteed dividends.

In view of another trial we do not discuss other evidence bearing on Count IV. We are not to be understood as commenting on the effect of any of the evidence other than with respect to giving the affirmative charge for defendant.

On consideration of all the circumstances shown by the evidence, we are not persuaded that it is without conflict on the issue whether plaintiff had knowledge of the facts constituting the fraud alleged in Count IV. Whether, within one year prior to filing suit, plaintiff had knowledge of such facts, or knowledge of facts which would lead a reasonable man to make diligent inquiry which would have enabled plaintiff to discover the fraud alleged in Count IV was a question for determination by the jury.

The affirmative charge took from the jury determination of the issue whether plaintiff was barred by the statute of limitations from recovery on all four counts. As to Counts II, III, and V, the court did not err in so instructing the jury. We are of opinion, however, that the court did err in giving the affirmative charge for defendant as to Count IV, and, therefore, that the court did not err in granting the motion for new trial.

Affirmed.

HEFLIN, C. J., and BLOODWORTH, MADDOX, and McCALL, JJ., concur.