I concur with the majority's holding that the summary judgment is due to be affirmed as to Gray's outrage claim and reversed as to his conversion claim. However, for two reasons, I must respectfully dissent from the majority's holding affirming the summary judgment as to Gray's fraud claim.
The majority holds that, as a matter of law, Gray's fraud claim is barred by the statute of limitations because "a reasonable person of ordinary prudence would have discovered" Liberty National's allegedly fraudulent acts "in 1978 or within one year thereafter." 623 So.2d at 1159. My initial concern with the majority's analysis is that it ignores *Page 1161 
the fact that Liberty National made a separate and distinct unauthorized draft against Gray's checking account each month from February 1978 until March 1990; each of those unauthorized drafts would have given rise to a separate fraud claim. Cf.King Homes, Inc. v. Roberts, 46 Ala. App. 257, 240 So.2d 679,cert. denied, 286 Ala. 736, 240 So.2d 689 (1970) (court held that each act of repair gave rise to a separate negligence cause of action). Thus, even if a reasonable person in Gray's position would have discovered the first unauthorized draft, Gray's failure to bring an action within one year of that draft has no effect on his right to commence a fraud action to recover based on unauthorized drafts after February 1978. Section 6-2-38 grants Gray two years from the date of each unauthorized draft made after January 9, 1985, to commence a fraud action thereon. Section 6-2-3, upon which the majority's analysis focuses, is only a "saving clause," serving no purpose when the claimant has commenced his action within two years from the date of the fraud. See Williams v. Mertz, 549 So.2d 87
(Ala. 1989). Therefore, regardless of when Gray discovered, or should have discovered, each unauthorized draft, he is entitled, at the least, to have a jury consider his fraud claim as to those unauthorized drafts that Liberty National made within the two-year period before Gray filed this action on November 14, 1990. See Garrett v. Raytheon Co., 368 So.2d 516,521 (Ala. 1979) (limiting recovery to the those acts that occurred within the limitations period); see also AmericanMutual Liability Ins. Co. v. Agricola Furnace Co., 236 Ala. 535,183 So. 677 (1938); Howell v. City of Dothan, 234 Ala. 158,174 So. 624 (1937).
Also, in light of the fact that Gray alleges, and supports by evidence, that he had no actual knowledge until August 1990 that a portion of Liberty National's monthly drafts over a 12-year period were unauthorized, I disagree with the majority's determination that, as a matter of law, a reasonable person in Gray's position would have discovered the first unauthorized draft. I believe this determination is a question of fact for the jury.
Section 6-2-3 operates when a fraud action would otherwise be barred under § 6-2-38 and grants that party two years from the time of the discovery of the fact constituting fraud to commence an action. The issue of when a fraud is discovered, for the purpose of the running of the limitations period under § 6-2-3 was discussed at length in the context of a review of a summary judgment in Hicks v. Globe Life Accident Ins. Co.,584 So.2d 458 (Ala. 1991). Essentially, "the law in Alabama has long been that '[t]he question of when a party discovered or should have discovered fraud which would toll the statute of limitations is for the jury.' " Thompson v. National HealthIns. Co., 549 So.2d 12, 14 (Ala. 1989) (quoting Vandegrift v.Lagrone, 477 So.2d 292, 295 (Ala. 1985)); see Hickox v. Stover,551 So.2d 259 (Ala. 1989); Deupree v. Butner, 522 So.2d 242
(Ala. 1988); Davis v. Brown, 513 So.2d 1001 (Ala. 1987); Myers v.Geneva Life Ins. Co., 495 So.2d 532 (Ala. 1986); Elrod v. Ford,489 So.2d 534 (Ala. 1986); American Pioneer Life Ins. Co. v.Sandlin, 470 So.2d 657 (Ala. 1985); Thomaston v. Thomaston,468 So.2d 116 (Ala. 1985); Osborn v. Johns, 468 So.2d 103
(Ala. 1985); Ratledge v. H W, Inc., 435 So.2d 7 (Ala. 1983);Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala. 1981);Sims v. Lewis, 374 So.2d 298 (Ala. 1979); Cities Service Oil Co.v. Griffin, 357 So.2d 333 (Ala. 1978); Mitchell Homes, Inc. v.Tew, 294 Ala. 515, 319 So.2d 258 (1975); Loch RidgeConstruction Co. v. Barra, 291 Ala. 312, 280 So.2d 745 (1973);State Security Life Ins. Co. v. Henson, 288 Ala. 497,262 So.2d 745 (1972); and Central of Georgia Ry. v. Ramsey, 275 Ala. 7,151 So.2d 725 (1962). See, also, Independent Life Acc. Ins.Co. v. Parker, 470 So.2d 1289 (Ala.Civ.App. 1985); Wilson v.Draper, 406 So.2d 429 (Ala.Civ.App. 1981); Jackson Co. v.Faulkner, 55 Ala. App. 354, 315 So.2d 591 (1975). Further, "[t]he question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases where the plaintiff actually knew
of facts that would put a reasonable person on notice of fraud." Hicks, 584 So.2d at 462. These legal principles support Gray's contention that, under the facts of this case, a jury should determine whether an ordinary person of reasonable prudence in Gray's position should have discovered that Liberty National *Page 1162 
was making unauthorized drafts from his checking account.
Gray had 12 policies of insurance with Liberty National over the period 1944 to 1978. In 1963, he executed the first of five agreements with Liberty National authorizing it to automatically draft, by pre-authorized check, money from Gray's checking account to pay itself insurance premiums. Gray had three checking accounts at the same bank, and he alleges that over the years Liberty National's automatic draft power had been transferred from one account to another. On August 29, 1972, Gray executed the last agreement authorizing Liberty National to draft premiums for three different policies of up to $30.00 per month.
For some time before February 1978, Liberty National had drafted $18.75 from Gray's checking account, and Gray had received in his monthly bank statement a canceled pre-authorized check payable to Liberty National for that amount. In February 1978, when Liberty National began drafting $10.86 per month from Gray's account to pay premiums for his son Jeffery Gray's insurance, it did not use a separate pre-authorized check. It merely increased the amount of the draft it was already drawing against Gray's account. Although the majority emphasizes the significance of that $10.86 increase, a jury could find that a reasonably prudent person in Gray's position would have concluded that the increase was authorized.
Liberty National contends that its unauthorized drafts from Gray's account were the result of an inadvertent mistake that it failed to discover for 12 years. I do not understand how the majority can, as a matter of law, charge Gray with discovery of a fact that Liberty National, an insurance company in the business of record keeping, overlooked for 12 years.
For the foregoing reasons, Gray's fraud claim should be submitted to a jury.