[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1058 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1059 
Pamela Hanner, as guardian of Stephen D. Hanner, appeals from a summary judgment in favor of Metro Bank and Protective Life Insurance Company. We remand the cause to the trial court because the judgment appealed from is not a final judgment.
 I.
In July 1994, Bret Hanner and Pamela Hanner were divorced. At the time of the divorce, Bret and Pamela had a minor son, Stephen. An agreement between Bret and Pamela, incorporated into the divorce judgment, provided, in part:
 "That [Pamela] and [Bret] will each maintain the separate life insurance policies on each of their lives presently in effect, and shall name the minor child, [Stephen], as the irrevocable beneficiary of each of those life insurance policies."
At the time of the divorce, Bret had a $75,000 life insurance policy with State Farm. The parties do not reveal if Stephen was ever made the beneficiary of that policy. According to Pamela's deposition testimony, sometime before January 1997, Bret stopped paying premiums on the State Farm policy and allowed it to lapse. Also according to Pamela, sometime later in 1997, the St. Clair Circuit Court ordered Bret to obtain another life insurance policy and to name Stephen as the irrevocable beneficiary of that policy. Bret subsequently purchased a life insurance policy from Primerica, and Stephen was listed as the beneficiary. Apparently, Stephen was not made an irrevocable beneficiary of that policy, because Pamela testified in deposition that Bret later changed the beneficiary of the Primerica policy from Stephen to his new wife, Ann.
To secure a $330,000 loan from Metro Bank, Bret assigned the Primerica insurance policy to Metro Bank. Subsequently, however, Bret allowed the Primerica policy to lapse for nonpayment of premiums.
In March 1999, Bret told a Metro Bank insurance agent, who sold insurance underwritten by Protective Life, that he needed to purchase a life insurance policy naming Stephen as beneficiary in order to comply with the terms of the divorce judgment. According to the Metro Bank insurance agent, although Bret stated that he needed the policy to comply with the terms of the divorce judgment, he did not elaborate on what those terms were. In June 1999, Protective Life issued a 00,000 life insurance policy to Bret, naming Stephen as beneficiary of $75,000 and naming Ann as beneficiary of the remaining $25,000. Bret did not request that Protective Life name Stephen as an irrevocable
beneficiary of the policy.
In or shortly before January 2002, Metro Bank learned that Bret's Primerica policy, which Bret had assigned to Metro Bank to secure its $330,000 loan to Bret and Ann, had been canceled for nonpayment. On January 18, 2002, Bret assigned to Metro Bank the Protective Life policy as new collateral for the loan.
Bret died on August 16, 2002. Pamela claims that, on August 20, 2002, she contacted Protective Life's claims department in order to obtain instructions on filing a claim on behalf of Stephen for his share of *Page 1060 
the proceeds of the Protective Life policy. She also claims that, several days later, a representative of Metro Bank contacted her and requested that she fill out some release forms so that, pursuant to the assignment of the policy by Bret, Metro Bank could collect the proceeds. Pamela refused. A few days later, Protective Life sent Pamela a letter informing her that the outstanding balance of the loan secured by the insurance policy was greater than the face value of the policy and that all of the proceeds of Bret's life insurance policy would be paid to Metro Bank. On September 9, 2002, Protective Life paid the benefits under the policy to Metro Bank. In a letter sent by Pamela's attorney to Protective Life, Pamela informed Protective Life of the divorce judgment requiring Bret to maintain a life insurance policy naming Stephen as irrevocable beneficiary. Although the letter is dated September 6, 2002, which was three daysbefore Protective Life paid the proceeds of the policy to Metro Bank, the letter is stamped "received" by Protective Life on September 12, 2002, three days after it had paid the policy proceeds to Metro Bank.
In December 2002, Protective Life filed a declaratory-judgment action in the St. Clair Circuit Court, seeking a declaration of the proper owner of the proceeds of the insurance policy. Metro Bank and Pamela, as Stephen's guardian, were named as defendants in Protective Life's complaint. Pamela filed a counterclaim against Protective Life, asserting claims of breach of contract, bad faith, conversion, and negligence. She also filed a cross-claim against Metro Bank, alleging unjust enrichment and conversion.
Pamela, Metro Bank, and Protective Life all filed motions for a summary judgment. On August 11, 2005, the trial court entered an order granting Metro Bank's and Protective Life's motions and denying Pamela's motion, stating: "Metro Bank is the rightful recipient of the [life insurance] proceeds. . . ." Pamela appealed.
 II. A.
In addition to her counterclaim against Protective Life and her cross-claim against Metro Bank, Pamela filed a separate action against Bret's estate and against Bret's widow, Ann. That action was consolidated with the declaratory-judgment action from which Pamela has appealed. However, the record does not indicate that a final judgment has been entered in Pamela's action against Ann and the estate.
An appeal will not lie from a nonfinal judgment. Robinson v.Computer Servicenters, Inc., 360 So.2d 299, 302 (Ala. 1978). "A ruling that disposes of fewer than all claims or relates to fewer than all parties in an action is generally not final as to any of the parties or any of the claims. See Rule 54(b), Ala. R. Civ. P." Wilson v. Wilson, 736 So.2d 633, 634
(Ala.Civ.App. 1999). When an action involves multiple claims or parties, Rule 54(b), Ala. R. Civ. P., gives the trial court the discretion to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties." If a trial court certifies a judgment as final pursuant to Rule 54(b), an appeal will generally lie from that judgment.
According to Wright and Miller:
 "Although federal courts usually have said that consolidated actions do not lose their separate identity, some courts have reasoned persuasively that they should be treated as a single action for purposes of review by way of Rule 54(b), and that a judgment in the consolidated case that does not dispose of all claims *Page 1061 
and all parties is appealable only if certified as that rule requires."
9 Charles Alan Wright Arthur R. Miller, FederalPractice and Procedure § 2386 (2d ed.1995) (footnote omitted). The United States Court of Appeals for the Ninth Circuit has said:
 "In our view, the best approach is to permit the appeal only when there is a final judgment that resolves all of the consolidated actions unless a 54(b) certification is entered by the district court. This leaves the discretion with the court which is best able to evaluate the [e]ffect of an interim appeal on the parties and on the expeditious resolution of the entire action."
Huene v. United States, 743 F.2d 703, 705 (9th Cir.1984). See, also, Trinity Broad. Corp. v. Eller,827 F.2d 673, 675 (10th Cir.1987) ("To obtain review of one part of a consolidated action, appellant must obtain certification under Fed.R.Civ.P. 54(b)."); and Spraytex, Inc. v. DJST,96 F.3d 1377, 1382 (Fed. Cir.1996) ("We now extend this approach to join the Ninth and Tenth Circuits in adopting the rule that, absent Rule 54(b) certification, there may be no appeal of a judgment disposing of fewer than all aspects of a consolidated case."). We find persuasive the holdings of these decisions interpreting the Federal Rules of Civil Procedure, on which our own Rules of Civil Procedure are based. Accordingly, we hold that a trial court must certify a judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., before a judgment on fewer than all the claims in a consolidated action can be appealed.
 B.
"[I]f it is clear and obvious from the language used by the trial court in its order that the court intended to enter a final order pursuant to Rule 54(b), then we will treat the order as a final judgment. . . ." Schneider Nat'l Carriers, Inc. v.Tinney, 776 So.2d 753, 755 (Ala. 2000), summarizing the holding in Sho-Me Motor Lodges, Inc. v. Jehle-Slauson Constr.Co., 466 So.2d 83, 87 (Ala. 1985). In Sho-Me MotorLodges, the trial court's order clearly indicated that the court intended to enter an order pursuant to Rule 54(b) because the order, clearly quoting Rule 54(b), stated: "`The Court further finds there is no just reason for delay in the entry of said final judgment.'" 466 So.2d at 87. And in SchneiderNational Carriers, Inc., we recognized the existence of a Rule 54(b) certification based on the fact that the trial court specifically cited Rule 54(b).
In the instant case, the trial court's summary-judgment order states that it "resolves all controversies pending in this case with prejudice and is final in accordance with the Alabama Rules of Civil Procedure." However, the order does not mention Rule 54(b), nor does it quote from that rule, other than to use the word "final." Lastly, the order fails to recognize that the action in which it was entered had previously been consolidated with another action. Accordingly, we cannot say that the trial court clearly intended to certify its order as a final order under Rule 54(b), nor can we overlook the absence of a final judgment, a matter affecting our jurisdiction, by assuming that the trial court would certify its judgment as final pursuant to Rule 54(b), notwithstanding the fact that the order is entered in an action comprising two consolidated actions.
 III. "When it appears from the record that [an] appeal was taken from an order which was not final, but which could have been made final by a Rule 54(b) certification, we will remand the case to the trial court for a determination as to *Page 1062 
whether it chooses to certify the order as final, pursuant to Rule 54(b), and, if it so chooses, to enter such an order and to supplement the record to reflect that certification. The judgment will be taken as final as of the date the 54(b) certification is entered. . . .
 ". . . [I]f this Court remands the case to the trial court for the opportunity of making such a certification, the trial court will have the limited jurisdiction to enter a 54(b) certification if, in its discretion, it decides the entry of such a certification is appropriate."
Foster v. Greer Sons, Inc., 446 So.2d 605, 609-10
(Ala. 1984), overruled on other grounds, Ex parteAndrews, 520 So.2d 507, 510 (Ala. 1987).
We remand this case for the trial court (1) to make the interlocutory order of August 11, 2005, a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.; (2) to adjudicate the remaining claims, thus making the interlocutory order of August 11, 2005, final and appealable; or (3) to take no action, in which event the appeal will be dismissed as being from a nonfinal judgment. If the trial court elects to enter the Rule 54(b) certification or any other final judgment, a supplemental record reflecting such action should be prepared and forwarded to this Court within 14 days from the date this opinion is released. The judgment will be considered final as of the date the new order is entered. If no supplemental record is forwarded to this Court within 14 days of the date this opinion is released, this appeal will be dismissed.
REMANDED.
HARWOOD, WOODALL, BOLIN, and PARKER, JJ., concur.
NABERS, C.J., recuses himself.
 On Return to Remand
LYONS, Justice.
On June 23, 2006, we remanded this case for the trial court to make its interlocutory order of August 11, 2005, a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.; to adjudicate the remaining claims, thus making the interlocutory order final; or to take no action, in which event the appeal would be dismissed.Hanner v. Metro Bank, 952 So.2d 1056. On remand, the trial court certified the summary judgment in favor of Metro Bank and Protective Life Insurance Company as final, pursuant to Rule 54(b). We now consider Pamela Hanner's arguments on the merits. For a summary of the relevant facts, see our opinion on original submission. We affirm in part, reverse in part, and remand.
 I. Standard of Review
"The standard of review applicable to a summary judgment is the same as the standard for granting the motion. . . ."McClendon v. Mountain Top In-door Flea Market, Inc.,601 So.2d 957, 958 (Ala. 1992).
 "A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present `substantial evidence' creating a genuine issue of material *Page 1063 
fact — `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Ala. Code 1975, ec; 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Capital Alliance Ins. Co. v. Thorough-Clean, Inc.,639 So.2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley,893 So.2d 337, 342 (Ala. 2004).
 II. Analysis
In December 2002, Protective Life Insurance Company filed a declaratory-judgment action in the St. Clair Circuit Court, naming Pamela, as her son Stephen Hanner's guardian, and Metro Bank as defendants. The action sought a declaration of the proper owner of the proceeds of Bret Hanner's life insurance policy, which named his son Stephen as a beneficiary, but which Bret had assigned to Metro Bank as collateral for a loan.[1] Pamela counterclaimed against Protective Life, alleging breach of contract, bad faith, conversion, and negligence, and cross-claimed against Metro Bank, alleging unjust enrichment and conversion. The trial court entered a summary judgment for Protective Life and Metro Bank, and Pamela appealed.
 A. Declaratory Judgment 1. Vested Equitable Interest
Pamela argues that the divorce judgment requiring her former husband Bret to maintain his life insurance policy and to name Stephen as the irrevocable beneficiary created in Stephen a vested equitable interest in Bret's policy that could not be defeated without Stephen's consent. In Williams v.Williams, 276 Ala. 43, 158 So.2d 901 (1963), this Court held that a divorce judgment that required a father to maintain his then existing life insurance policy and to name his minor children as irrevocable beneficiaries of that policy created in the children vested equitable interests in the policy that could not be defeated by changing the beneficiary under the policy to someone other than the children. The divorce judgment inWilliams provided:
 "`It is further ORDERED and DECREED by the Court that [the father] shall change [the] beneficiary in the existing life insurance policy on his life presently in effect so as to name his above named minor children as irrevocable beneficiaries thereof; and he is further required to keep said insurance in effect during the minority of the said children.'"
276 Ala. at 45, 158 So.2d at 902. The father inWilliams, in defiance of the divorce judgment, named his mother as beneficiary of the life insurance policy. This Court held that the children nevertheless had superior rights to the proceeds of the policy because the divorce judgment created in the children vested equitable interests in that policy:
 "An agreement by an insured in consideration of the settlement of property rights by which he agrees to make his children the sole irrevocable beneficiaries of a policy of life insurance, vests them with an equitable interest therein which may not be defeated without their consent. . . .
 ". . . .
 "The legal consequence of the decree in the divorce suit was to give the children a vested equitable interest in the policy, and the subsequent change of beneficiary did not establish superior *Page 1064 
rights in the new beneficiary. In violation of the agreement and the decree, the insured wrongfully attempted to deprive his children of the proceeds of the policy by an attempted change of beneficiary. Equity will intervene and declare them the beneficiaries in the policy."
276 Ala. at 46-47, 158 So.2d at 903 (emphasis added).
In Frawley v. U.S. Steel Mining Co., 496 So.2d 731
(Ala. 1986), a divorce judgment required a father to maintain a life insurance policy and to name his minor child as the irrevocable beneficiary of that policy. However, in defiance of the judgment, the father never named the child as the beneficiary of the policy. This Court, citing Williams, held that the divorce judgment created in the minor child a vested equitable interest in her father's insurance policy, even though the father had never named the child as the beneficiary of the policy.
As noted, the divorce judgment in the instant case required Bret to maintain the life insurance policy that was "presently in effect" at the time that judgment was entered, i.e., a policy with State Farm. Based on Frawley andWilliams, we hold that the divorce judgment created in Stephen a vested equitable interest in the State Farm life insurance policy.
 2. Effect of Change in Policy
It is undisputed that the Protective Life policy, which was the policy in effect at the time of Bret's death and which is the policy at issue in this case, is not the same policy that was in effect at the time the divorce judgment was entered; the policy in effect at that time was the State Farm policy. As noted, Pamela testified that Bret had allowed the State Farm policy to lapse and replaced it with a policy with Primerica Life Insurance Company, which he also allowed to lapse. The policy at issue here, the policy issued by Protective Life, was issued after the Primerica policy had lapsed and after Bret told a Metro Bank employee that he needed to purchase the policy in order to comply with the terms of the divorce judgment.
In Brown v. Brown, 604 So.2d 365 (Ala. 1992), a divorce judgment required a father to keep his then existing life insurance policies in effect and to name his son as the irrevocable beneficiary of those policies. The divorce judgment specifically referenced the particular policies on the father's life that were in effect at the time the divorce judgment was entered. After the divorce judgment was entered, the father named his son as the beneficiary of the policies, but he later allowed one of those policies to lapse. The father subsequently purchased another policy but did not name his son as beneficiary of that policy; rather, he named his new wife as the beneficiary. After the father died, the son claimed an interest in the policy the father had purchased after he had allowed the original policy to lapse. The father's new wife argued that because the policy was not the same policy in effect at the time the divorce judgment was entered the son did not have a vested interest in that policy. This Court disagreed, noting that the evidence showed that the new policy was purchased as a replacement for the policy referenced in the divorce judgment.
As noted, in the instant case, a Metro Bank employee testified that Bret told her that he needed to purchase the Protective Life policy in order to comply with the terms of the divorce judgment. Additionally, the record contains a letter sent by Metro Bank to Protective Life requesting documentation showing Stephen's interest as beneficiary of the policy. The letter states: "This must be furnished to the courts per divorce decree. . . ." Accordingly, we hold that Pamela has presented *Page 1065 
substantial evidence indicating that the Protective Life policy was purchased as a replacement for the State Farm policy in which Stephen had a vested equitable interest. Therefore, under the reasoning of Brown, we hold that substantial evidence exists indicating that Stephen had a vested interest in the Protective Life policy.[2]
 3. Effect of Assignment of Policy
Metro Bank points out that in the cases on which Pamela relies the divorced policy-holders designated as beneficiaries
of life insurance policies people other than those who had acquired vested interests in those policies. Metro Bank points out that, in the instant case, in contrast to those cases, Bretdid name Stephen as a beneficiary of the Protective Life policy. Metro Bank contends that Bret's assignment of the policy, as opposed to his naming of a beneficiary other than his son, distinguishes the instant case from those relied on by Pamela.
Metro Bank, citing Rountree v. Frazee, 282 Ala. 142,209 So.2d 424 (1968), contends that, unlike the cases on which Pamela relies, Bret's assignment of the policy did not divest Stephen of his vested interest in that policy. InRountree, a husband had a life insurance policy naming his wife as beneficiary. The husband assigned his policy to a creditor as collateral for a loan. When the husband died, part of the loan balance was satisfied with the proceeds of the policy, leaving no proceeds for the wife. The trial court upheld the wife's claim against the husband's estate for the policy proceeds. On appeal, the husband's estate argued that "the assignment of the policy to the [creditor] had the effect of changing the beneficiary thereby divesting [the wife] of any interest in the policy," citing a case decided by the Supreme Court of Georgia. This Court, affirming the judgment of the trial court, disagreed with that argument, stating: "We are not in accord with the holding that the assignment constituted a change of beneficiary." 282 Ala. at 146, 209 So.2d at 426.
However, while the assignment in Rountree may not have constituted a literal change in the beneficiary of the insurance policy, it did have the effect of subordinating the beneficiary's interest in the policy proceeds to that of the creditor.
 "In accordance with the rule that a beneficiary of an ordinary life insurance policy that does not authorize a change of beneficiary acquires a vested and absolute interest, which cannot be divested without the beneficiary's consent, and because an absolute assignment has the *Page 1066 effect of divesting the named beneficiary of any interest in the policy, the insured cannot assign such a policy without the beneficiary's consent. . . ."
44 Am.Jur.2d Insurance § 793 (2003) (footnotes omitted; emphasis added). Accordingly, we hold that, in the instant case, the fact that Bret assigned the policy to someone other than Stephen, instead of naming someone otherthan Stephen as beneficiary, is a distinction without a difference.
 4. Metro Bank
Pamela next argues that the trial court erred in entering a summary judgment in favor of Metro Bank as to the declaratory judgment.[3] A District Court of Appeals of Florida examined the question of when an assignee for value of a life insurance policy has an interest superior to an intended beneficiary's equitable interest in Wewahitchka State Bank v. Mixon,504 So.2d 1328 (Fla.Dist.Ct.App. 1987):
 "When appellee and her former husband, Porter Mixon, were divorced in Alabama in 1978, the judgment of divorce expressly required Mr. Mixon to retain appellee as beneficiary of the two life insurance policies, of which he was the owner. No one notified Liberty National of the judgment's restrictive provisions in regard to the policies and appellee never obtained possession of the policies, leaving possession with Mr. Mixon.
 "Some time later Mr. Mixon moved to Florida and in 1984 obtained a loan from appellant Bank, assigning to the Bank as collateral for the loan the life insurance policies. Prior to making the loan, the Bank contacted Liberty National and was advised that the policies were in force and effect and could be assigned or the indebtedness. Thereafter, the proper assignments were made by Mr. Mixon to the Bank in consideration for the loan. The assignments were acknowledged by Liberty National in December 1984. Since that time, the Bank has continued to hold in its possession the original insurance policies along with the assignments.
 "In April 1985, Mr. Mixon died. He still was indebted to the Bank on the above-mentioned loan and therefore the Bank presented its claim on the life insurance policies to Liberty National. However, faced with a claim on the same policies by appellee, Liberty National brought an interpleader action and was permitted by the court to deposit the life insurance proceeds from the policies in question into the court registry. . . .
 "The Bank contends that its interest in the proceeds, as a bona fide assignee, is superior to appellee's equitable interest created by the divorce decree, especially in light of the facts that appellee never perfected her interest by notifying Liberty National of her beneficiary status while the Bank did so notify Liberty National of its interest, and appellee never took possession of the policies. We agree.
". . . In Couch On Insurance 2d (Rev. Ed.) Section 63A:293, the author provides the following insight into the issue involved here:
 "`Although a policy of life insurance is not a negotiable instrument, there is authority that a bona fide assignee for value in a life policy who has no notice of latent equities in a third party takes the assignment free and clear of such equities. . . .'
 ". . . . *Page 1067 
 "The situation involved in this appeal is substantially different from that involved in many of the cases relied upon by appellee in which, despite the language of a divorce decree making the insured's ex-spouse the irrevocable beneficiary of a life insurance policy, the insured named, without consideration, a new donee beneficiary on the policy. In those cases, the former spouse has been found to be the superior beneficiary since the later named beneficiary was not a bona fide purchaser or assignee of the policy. The situation involved here is more akin to that in which the later named beneficiary in effect becomes a bona fide purchaser of the policy with rights superior to that of one with even a vested equitable interest. . . .
 ". . . [I]n the instant situation, as the bona fide assignee for value of the life insurance policies in question, appellant Bank has an interest superior to appellee's equitable interest. The Bank's status as a bona fide assignee was made possible by appellee's total inaction in protecting her interest in the policies by either taking possession thereof or by at least timely notifying Liberty National of her claim. Therefore, the Bank is entitled to the proceeds of the two policies in question."
504 So.2d at 1328-30. Cf. Berryman v. Adams,883 So.2d 214 (Ala.Civ.App. 2003) (ruling in favor of the subsequently named beneficiary, who paid for the policy involved therein and who had no knowledge of her husband's obligation under an earlier divorce judgment to maintain life insurance for the benefit of his minor children from a previous marriage). We find the reasoning ofMixon, supra, persuasive, and we adopt that reasoning.
A bona fide assignee is analogous to a bona fide purchaser, which this Court has defined as follows:
 "`A bona fide purchaser is one who (1) purchases legal title, (2) in good faith, (3) for adequate consideration, (4) without notice of any claim of interest in the property by any other party. Notice sufficient to preclude a bona fide purchaser may be actual or constructive or may consist of knowledge of facts which would cause a reasonable person to make an inquiry which would reveal the interest of a third party.'"
Manning v. Wingo, 577 So.2d 865, 868 (Ala. 1991) (emphasis added) (quoting Rolling "R" Constr., Inc. v.Dodd, 477 So.2d 330, 331-32 (Ala. 1985)).
As noted, in March 1999, shortly before he purchased the Protective Life policy, Bret told Teresa Carden, a Metro Bank employee who sold insurance for Protective Life, that he needed to purchase a life insurance policy naming Stephen as the beneficiary in order to comply with the terms of the divorce judgment. Carden testified in her deposition that Bret stated that he needed to purchase the life insurance policy to comply with the terms of the divorce judgment, although she contends that Bret did not elaborate on what those terms were. In June 1999, Bret asked Carden to obtain a letter for him from Protective Life showing that Stephen had been designated as a beneficiary on the policy. According to Carden, Bret stated that he needed the letter "for the courts." On June 16, 1999, Carden wrote a letter on Metro Bank letterhead regarding "Policy PL0640906," requesting the information that Bret had asked her to obtain. The letter is apparently directed to Protective Life, although it does not bear Protective Life's name or address. The letter stated:
 "Please send a statement regarding the $75,000.00 beneficiary designation to Stephen D. Hanner, son. *Page 1068 
 "DO NOT include the $25,000.00 beneficiary designation to wife.
 "This must be furnished to the courts per divorce decree, and other information regarding this policy should not be disclosed.
 "Thank you for your help. Please send to my office and I will deliver.
 "Teresa Carden, Agent"
On August 30, 1999, Protective Life sent a letter regarding policy no. PL0640906 addressed to Bret Hanner; that letter stated:
 "This letter is in answer to the request made by your agent Teresa Carden.
 "As of this date, if the death benefit became payable, Stephen D. Hanner would be entitled to $75,000.00.
 "Please call if I can be of any further service."
The letter is signed by Grace B. Davis, policy service representative, policyholder services, and a copy is shown to Teresa F. Carden.
Whether the issue of notice presents a jury question has been considered in the analogous context of determining the time of commencement of the limitations period in a fraud action. That the determination is made on a case-by-case basis is evident from the following quote from McLaughlin v. Pannell KerrForster, 504 So.2d 264, 265 (Ala. 1987):
 "In State Security Life Insurance Co. v. Henson, 288 Ala. 497, 504, 262 So.2d 745, 751
(1972), this Court wrote:
 "`Whether, within one year prior to filing suit, plaintiff had knowledge of such facts, or knowledge of facts which would lead a reasonable man to make diligent inquiry which would have enabled plaintiff to discover the fraud alleged . . . was a question for determination by the jury.' (Emphasis added.)
 "This Court has decided that under certain circumstances the time of the discovery of the fraud or the time the fraud should have been discovered can be determined as a matter of law. In so determining, this Court does not make delphic pronouncements, but has before it either uncontroverted evidence that plaintiffs had such notice[,] Davis v. Davis, 494 So.2d 393 (Ala. 1986); Kelly v. Smith, 454 So.2d 1315
(Ala. 1984); Retail, Wholesale, Department Store Employees Union, Local 453 v. McGriff, 398 So.2d 249 (Ala. 1981); Moulder v. Chambers, 390 So.2d 1044 (Ala. 1980); Seybold v. Magnolia Land Co., 376 So.2d 1083 (Ala. 1979), or uncontroverted evidence that a plaintiff, with the ability to read, had in his/her possession a document from which the fraud could have been ascertained by a simple investigation, Colafranceso v. Crown Pontiac GMC, Inc., 485 So.2d 1131 (Ala. 1986); Cooper Chevrolet, Inc. v. Parker, 494 So.2d 386 (Ala. 1985); Gonzales v. U-J Chevrolet Co., [451 So.2d 244 (Ala. 1984)]; Sexton v. Liberty National Life Ins. Co., 405 So.2d 18 (Ala. 1981)."
Although it is undisputed that Metro Bank did not have a copy of the divorce judgment at the time it took from Bret the assignment of the Protective Life policy, Metro Bank, through Carden, had notice that Bret had a son who was a beneficiary under the policy Bret had assigned as collateral for his loan with Metro Bank and that Bret had requested verification of the son's beneficiary status "for the courts." Therefore, we deem the question whether Metro Bank had a duty to inquire further into the possibility of another's interest in the policy to be a question of fact for the jury, and we reverse the summary judgment for Metro Bank in the declaratory-judgment action. *Page 1069 
 5. Protective Life
Likewise, Pamela argues that the trial court erred in entering the summary judgment in favor of Protective Life as to the declaratory judgment. We hold that a jury question exists as to Protective Life's knowledge based on facts developed at the time it issued the life insurance policy on Bret's life and at the time of payment of the proceeds of the policy.
Although Carden stated in her deposition that she was paid and employed by Metro Bank, Carden signed various Protective Life forms appearing in the record as its agent. Therefore, Protective Life, through Carden, had notice of the same information that was available to Metro Bank. We deem the question whether Protective Life had a duty to inquire further into the possibility that another party had an interest in the policy also to be a question of fact for the jury.
A jury question also exists as to Protective Life's knowledge at the time it paid the proceeds of the policy to Metro Bank. Pamela testified in her deposition, in response to questions from Pamela's attorney, as follows:
 "Q. I think you said Bret died what, August 16, 2002. What did you do with regard to the Protective Life Insurance policy when you learned of his death?
 "A. The following Monday I called to see what I needed to do to place a claim for Stephen.
 "Q. You called who?
 "A. Protective Life claims department."
In response to Pamela's telephone call, Protective Life wrote her a letter dated August 28, 2002, and sent her a claim form for Stephen. That letter stated, in pertinent part:
 `The beneficiaries are Stephen Hanner, 75% and Ann Hanner, 25%. However the collateral assignment from Metro Bank is for the pay off amount of $313,098.85. Unfortunately, the full amount of the insurance benefit will be paid to the bank. We need each beneficiary [to] complete a claim form so we may pay this balance to Metro Bank.
 ". . . .
 "Please have the beneficiary complete the enclosed claim form to the best of their ability. . . ."
Pamela testified that she refused to submit the claim form. According to Pamela's brief, on September 6, 2002, which was three days before Protective Life paid the proceeds of the policy to Metro Bank, Pamela's attorney informed Protective Life by telephone and by a faxed letter of Stephen's interest in the insurance policy. The record contains a letter from Pamela's attorney to Protective Life dated September 6, 2002, informing Protective Life of Stephen's interest in the policy. However, the "received" stamp on that letter indicates that it was not received until September 12, three days after Protective Life paid the proceeds to Metro Bank.
Protective Life argues that because it did not receive the letter from Pamela's attorney until after it had paid the proceeds of the policy to Metro Bank, it could not have known about Stephen's interest in the policy before it paid the proceeds. That argument does not consider the evidence of Pamela's telephone call shortly after Bret's death and the letter from Protective Life mailing Pamela a claim form for Stephen. Accordingly, we hold that whether and to what extent Protective Life knew of Stephen's interest in the policy proceeds at the time it paid the proceeds to Metro Bank is also a question of fact for the jury. Thus, the trial court erred in entering a summary judgment for Protective Life on its complaint for a declaratory judgment. *Page 1070 
 B. Pamela's Cross-claims of Conversion and Unjust Enrichment Against Metro Bank
Pamela argues that the trial court erred in entering a summary judgment in favor of Metro Bank on Pamela's conversion claim. "A common law action for conversion will lie for (1) a wrongful taking, (2) an illegal assumption of ownership, (3) an illegal use or misuse, or (4) a wrongful detention." Strickland v.Kafko Mfg., Inc., 512 So.2d 714, 716 (Ala. 1987). Pamela also argues that the trial court erred in entering a summary judgment on her claim that a constructive trust should have been imposed to prevent unjust enrichment by Metro Bank.
 "A constructive trust is a creation of equity that operates to prevent unjust enrichment. Rau v. Rau, 429 So.2d 593 (Ala.Civ.App. 1982). A constructive trust may be imposed when property has either been acquired by fraud, or where, in the absence of fraud, it would be inequitable to allow the property to be retained by the person who holds it. Rau."
Holley v. Holley, 660 So.2d 608, 610
(Ala.Civ.App. 1995). In addition to the knowledge we impute to Metro Bank through Carden, Pamela testified that she had a telephone conversation with another bank employee, Joe Allinder, who informed her, she says, that she needed to sign release forms so that Metro Bank could receive the proceeds from the insurance policy. Even though Pamela refused to sign the release forms, Metro Bank accepted the proceeds of Bret's insurance policy pursuant to Bret's assignment of the policy to it. For the same reason the trial court erred in finding that no genuine issue of material fact existed regarding the proper owner of the insurance proceeds, we hold that the trial court erred in entering a summary judgment in favor of Metro Bank on Pamela's conversion and unjust-enrichment claims.
 C. Pamela's Counterclaims Against Protective Life
Pamela argues that, by disbursing the proceeds of the Protective Life policy to Metro Bank, Protective Life breached the insurance contract, of which, Pamela argues, Stephen was a third-party beneficiary. It is undisputed that the terms of the policy allowed the policy to be assigned and that the rights and interest of the beneficiary would be subject to an assignment, so long as that beneficiary was not an irrevocable beneficiary. It is also undisputed that Stephen was never named an irrevocable beneficiary of the policy. Nevertheless, because we hold that a jury question is presented regarding the extent to which Protective Life had knowledge of Stephen's interest in the policy before Bret assigned the policy to Metro Bank or before Protective Life paid the proceeds of the policy to Metro Bank, whether Protective Life breached the contract is also a jury question. Accordingly, we hold that the trial court erred when it entered the summary judgment in favor of Protective Life on Pamela's breach-of-contract claim.
Pamela also contends that the trial court erred in entering a summary judgment in favor of Protective Life on Pamela's bad-faith claim. On appeal, Pamela cites State Farm Fire Casualty Co. v. Slade, 747 So.2d 293 (Ala. 1999), which recognized the "abnormal" case of bad-faith failure to pay an insurance claim. At this point in the proceedings, we cannot determine whether the alleged bad faith in this case is of the "normal" or "abnormal" variety. The result of further proceedings before a fact-finder regarding Protective Life's knowledge of Stephen's interest in the policy is critical to a determination of whether Protective Life breached the contract; *Page 1071 
if it did, whether that breach was in bad faith; and if it did not, whether one or more of its actions constituted an "abnormal" case of bad faith. A summary judgment on Pamela's bad-faith claim at this stage of the proceedings is premature.
At one point in her brief to this Court, Pamela states that she presented substantial evidence in support of her conversion and negligence claims against Protective Life. However, she fails to cite any authority or otherwise to present arguments in support of those claims. Accordingly, the trial court's summary judgment against Pamela on those claims is due to be affirmed. SeeCity of Birmingham v. Business Realty Inv. Co.,722 So.2d 747, 752 (Ala. 1998) ("When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court's duty nor its function to perform an appellant's legal research."); Ex parte Riley, 464 So.2d 92, 94 (Ala. 1985) ("[I]t has long been the law in Alabama that failure to argue an issue in brief to an appellate court is tantamount to the waiver of that issue on appeal. An appellate court will consider only those issues properly delineated as such and will not search out errors which have not been properly preserved or assigned. . . . This standard has been specifically applied to briefs containing general propositions devoid of delineation and support from authority or argument.").
 III. Conclusion
We affirm the summary judgment for Protective Life as to Pamela's conversion and negligence claims against it. With respect to Pamela's bad-faith claim against Protective Life, we reverse the summary judgment in favor of Protective Life as premature and make no determination as to the existence of any genuine issue as to material fact. Because genuine issues as to material facts exist precluding a summary judgment in favor of Metro Bank and Protective Life as to Protective Life's complaint for a declaratory judgment and as to all of Pamela's claims against them other than her conversion, negligence, and bad-faith claims against Protective Life, we reverse the summary judgment and remand the case for further proceedings. Finally, we affirm the trial court's order denying Pamela's motion for a summary judgment because genuine issues as to material facts exist, precluding a summary judgment in her favor.[4] *Page 1072 
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HARWOOD, WOODALL, BOLIN, and PARKER, JJ., concur.
NABERS, C.J., recuses himself.
[1] Pamela Hanner and Bret Hanner were divorced in 1994.
[2] The Court in Brown expressly declined to decide whether a vested interest in a policy different from the one referenced in a divorce judgment can only be recognized if the new policy was purchased as a replacement for the policy referenced in the divorce judgment. The Court simply assumed such a requirement and concluded that the evidence clearly indicated that the new policy was indeed a replacement:
 "The intent of the insured to evade the court order by replacing the court-ordered policy may not be as important as the fact of the violation of the order. Nevertheless, a court in equity may certainly take such an intent into consideration in determining whether to impose a constructive trust [in favor of the person required by the divorce judgment to be named as irrevocable beneficiary]. Even assuming [the father's] intent in replacing the policy to be a material consideration, the proof here [shows that the policy was purchased as a replacement]."
604 So.2d at 368 (bracketed language added). In the instant case, we also assume such a requirement, and we hold that Pamela has presented evidence, sufficient to overcome a summary-judgment motion, indicating that the Protective Life policy was purchased as a replacement for the State Farm policy.
[3] The trial court concluded that Metro Bank, as the assignee of the Protective Life policy, was the "rightful recipient" of the policy proceeds.
[4] Normally, the denial of a motion for a summary judgment is not an appealable judgment. However, this Court stated inTanner v. State Farm Fire Cas. Co.,874 So.2d 1058, 1066 (Ala. 2003):
 "The procedural posture of the cross-motions for summary judgment in this case is like the procedural posture of the cross-motions in Lloyd Noland Foundation v. City of Fairfield Healthcare Authority, 837 So.2d 253
(Ala. 2002), which held that an `appeal from a pretrial final judgment disposing of all claims in the case (as distinguished from a Rule 54(b) summary judgment disposing of fewer than all claims) entitles the [appellant], for purposes of our review, to raise issues based upon the trial court's . . . denial of [the appellant's] summary-judgment motions. See Ala. R.App. P. 4(a)(1).'"
(Quoting Lloyd Noland Found, v. City of Fairfield HealthcareAuth., 837 So.2d 253, 263 (Ala. 2002).) The procedural posture of this case is similar to the procedural posture inNational Security Fire Casualty Co. v.Vintson, 414 So.2d 49, 51 (Ala. 1982), in which this Court held:
 "[W]here the plaintiff claims misrepresentation in the inception of the contract, . . . the plaintiff has the right to present his case to the jury under either a breach of contract theory or the tort of misrepresentation or both, because the same facts could support a finding that the contract did exist. . . .
 "The plaintiff may then elect to submit either theory, or both, to the factfinder, [Ala. R. Civ. P.] 8(a), with the proper instructions by the court to the jury that it must determine whether one, or both, of these theories are supported by the evidence, if at all. If the jury returns a verdict for the plaintiff, it may only award damages under one of the theories, not both. However, the choice rests with the jury. See, USF G v. McKinnon, 356 So.2d 600 (Ala. 1978)."