THOMPSON, Presiding Judge.
In October 2007, H.J.T. (“the father”) filed in the Calhoun Circuit Court, Family Division (“the trial court”), a complaint seeking a modification of his child-support obligation for J.D.T. (“the child”).[1] The State of Alabama, on behalf of the child’s mother, M.S.M. (“the mother”), answered and disputed the necessity of a modification of child support. The father’s child-support-modification action was designated by the trial court as case number CS-05-423.02 (“the child-support action”).
In June 2008, the State of Alabama, on behalf of the mother (hereinafter “the State”), filed a separate action seeking to have the father held in contempt for his failure to pay child support. The trial court designated the State’s contempt action as case number CS-05-423.03 (“the contempt action”). The father did not answer the State’s contempt complaint, but in September 2008 the father filed a motion seeking to consolidate the child-support action and the contempt action. The trial court granted the motion to consolidate.
The trial court conducted a hearing for both actions. On February 24, 2009, the trial court entered a judgment in the contempt action finding the father in contempt for his failure to pay child support, awarding the State a judgment in the amount of $31,583.50 for past-due child support and interest and ordering that the father be incarcerated.[2] In addition, in its February 24, 2009, judgment, the trial court ordered that the father’s income-tax refund be applied as a partial payment on the accumulated child-support arrearage. On March 2, 2009, the State filed a motion in the contempt action asking the trial court to amend the provision of the February 24, 2009, judgment pertaining to the disposition of the father’s income-tax re *1278 fund. The trial court purported to grant the State’s motion on March 17, 2009.
On March 19, 2009, the trial court entered a judgment in the child-support action in which it denied the father’s request for a modification of his child-support obligation.
On March 31, 2009, the father filed a notice of appeal. In his notice of appeal, the father designated the appeal as having been taken from the judgment in case number CS-05-423.03, i.e., the contempt action. However, on the docketing statement, the father designated case number “CS-05-423” as the matter from which he appealed, and he listed as the only issue on appeal the propriety of the trial court’s denial of his claim seeking a modification of his child-support obligation. In his brief submitted to this court, the father argues only that the trial court erred in refusing to modify his child-support obligation. Accordingly, construing the filings in favor of the father and applying the policy in favor of resolving the matter on the merits, we conclude that the father’s appeal pertains to the child-support-modification judgment entered in case number CS-05^423.02. See Brindley Constr. Co. v. Flanagan Lumber Co., 441 So.2d 907, 909 (Ala.Civ.App.1983) (“This court’s policy is to determine every case upon its merits if we can reasonably and rationally do so without undue stress to the statutes, rules or precedents which govern our review of cases.”).
As an initial matter, we note that this court asked the parties to brief the issue of the timeliness of the father’s appeal. The father maintains that the appeal is timely when measured from the date the most recent order by the trial court was entered. Because the father’s appeal is taken from the March 19, 2009, child-support judgment, we agree.
“[Wjhen two or more actions are consolidated under Rule 42, Ala. R. Civ. P., the actions do not lose their separate identities. League v. McDonald, 355 So.2d 695, 697 (Ala.1978). Moreover, ‘[a]n order of consolidation does not merge the actions into a single [action], change the rights or the parties, or make those who are parties to one [action] parties to another.’ Jerome A. Hoffman, Alabama Civil Procedure § 5.71 (2d ed.2001) (citing Evers v. Link Enters., Inc., 386 So.2d 1177 (Ala.Civ.App.1980)). Finally, ‘ “in consolidated actions ... the parties and pleadings in one action do not become parties and pleadings in the other.” ’ Ex parte Flexible Prods. Co., 915 So.2d 34, 50 (Ala.2005) (quoting Teague v. Motes, 57 Ala.App. 609, 613, 330 So.2d 434, 438 (Civ.1976)).”
Solomon v. Liberty Nat’l Life Ins. Co., 953 So.2d 1211, 1222 (Ala.2006). When actions are ordered consolidated, “each action retains its separate identity and thus requires the entry of a separate judgment.” League v. McDonald, 355 So.2d 695, 697 (Ala.1978). Accordingly, the February 24, 2009, judgment disposed of the contempt action, and the March 19, 2009, judgment resolved the child-support action.
Actions concerning child support are generally governed by the Alabama Rules of Juvenile Procedure. See M.C. v. L.J.H., 868 So.2d 465 (Ala.Civ.App.2003) (an action designated “CS” indicated a juvenile-court child-support matter); H.E.T. v. State ex rel. C.D.L., 883 So.2d 706, 709 (Ala.Civ.App.2003) (a “CS” designation generally refers to a child-support action in a juvenile court), abrograted on other grounds by F.G. v. State Dep’t of Human Res., 988 So.2d 555 (Ala.Civ.App.2007). The judgment establishing the father’s paternity of the child and his child-support obligation was entered by the trial court in August 2006; such actions are governed *1279 by the Alabama Rules of Juvenile Procedure. C.D.W. v. State ex rel. J.O.S., 852 So.2d 159 (Ala.Civ.App.2002).[3]
A notice of appeal in a juvenile action must be filed within 14 days of the date of entry of the judgment or the denial of a postjudgment motion. Rule 4(a)(1), Ala. R.App. P. In this case, the father filed his notice of appeal on March 31, 2009, within the 14 days allowed to appeal the March 19, 2009, judgment in the child-support action. Accordingly, we conclude that the father’s appeal of the child-support judgment was timely filed.[4]
The record indicates that in the August 2006 judgment establishing the father’s paternity and his child-support obligation, the trial court determined the father’s gross monthly income to be $6,737. The August 2006 judgment did not contain a finding regarding the mother’s income. The father’s child-support obligation as established by the August 2006 judgment was $875 per month.
The record reveals that at the time the initial child-support obligation was established, the father owned and operated his own trucking business. After the entry of the initial, August 2006, judgment, the mother filed a contempt action seeking a determination of a child-support arrearage. As a result of that action, the father was ordered to pay $218.75 a month toward the child-support arrearage in addition to his monthly child-support obligation.
The father testified at the final hearing in this matter that recent increases in the price of fuel had caused his trucking business to fail. The father testified that in 2007 he had filed for both business and personal bankruptcy. The father stated that the personal-bankruptcy case had been dismissed because he could not make the required payments to the bankruptcy court. The father presented no evidence regarding the bankruptcy proceeding pertaining to his trucking business, but the record indicates that that trucking business is no longer operational.
The father testified that after the failure of his trucking business, he was unemployed for several months during 2007 and that he then found employment with a trucking company. The father testified that he earned $500 per week at his employment, which involves “short haul” trucking. The father submitted an income affidavit indicating that his gross monthly income is $2,115. The father stated that although he could earn more for long-haul trucking, as he had when he owned his trucking business, he would no longer take long-haul-trucking jobs because he had children and a family.
*1280 The father admitted that since August 2006 he had made only seven payments toward his child-support obligation. In addition, the mother received some amounts for child support collected as a result of the father’s bankruptcy action.
The father testified that he had attempted to make other child-support payments for the child. The father has two children (“the older children”) from a previous relationship for whom he has also been ordered to pay support; the father also owes an arrearage for failure to support those children. The evidence indicates that all, or a great portion, of the child-support payments the father has made have typically been attributed to his child-support obligation for the older children. The father testified that he has no control over how the child-support agency to which he sends checks allocates or distributes his child-support payments. The father has made no child-support payments directly to the child’s mother.
In addition to the older children and the child, the father has two children with his current wife. The father presented evidence regarding his expenses, which included the preexisting child-support obligations. The father argued to the trial court that he could not afford his current child-support obligation for the child.
On appeal, the father argues only that the tidal court erred in refusing to modify his child-support obligation. The State argues that the father failed to demonstrate a change in circumstances warranting the modification. It is well settled that a party seeking to modify a child-support obligation must demonstrate a material change in circumstances warranting the modification. State ex rel. Roberts v. Roberts, 725 So.2d 980, 981-82 (Ala.Civ.App.1998); Beavers v. Beavers, 717 So.2d 373, 376 (Ala.Civ.App.1997); and Cherry v. Clark, 595 So.2d 909, 910 (Ala.Civ.App.1992). The father argues that the evidence demonstrates that a material change in the father’s income has occurred.
Since the entry of the previous child-support judgment, the father’s business went bankrupt and the father accepted employment with another trucking company. The record shows that the father earns less in his employment than he did when he owned his own business. The evidence indicates that the father’s gross monthly income has decreased from $6,737 at the time of the entry of the previous child-support judgment to approximately $2,100 per month. We note that the trial court did not make a finding regarding the amount of the father’s monthly gross income, and this court does not make a determination as to that matter. Given the facts, we conclude that the father has demonstrated the existence of a material change in circumstances.
However, the fact that a change in circumstances has occurred does not necessarily end the inquiry and require that the father’s child-support obligation be modified. Rule 32(A), Ala. R. Jud. Admin., establishes a rebuttable presumption that applying the child-support guidelines in a modification proceeding will result in a correct calculation of a parent’s child-support obligation. Williams v. Braddy, 689 So.2d 154, 157 (Ala.Civ.App.1996). However,
“[t]he presumption may be rebutted upon a determination by the trial court that application of the guidelines would be ‘ “manifestly unjust or inequitable,” ’ and upon entry of a written finding to that effect. Stewart v. Kelley, 587 So.2d 384, 385 (Ala.Civ.App.1991), quoting Rule 32(A)(ii), Ala. R. Jud. Admin. Moreover, ‘[i]f the trial court fails to apply the guidelines or to present findings of fact based upon evidence before *1281 the court indicating why the guidelines were not followed, this court will reverse.’ Nelson v. Landis, 709 So.2d 1299, 1300 (Ala.Civ.App.1998); quoting Simmovis v. Ellis, 628 So.2d 804 (Ala. Civ.App.1993).”
State ex rel. Roberts v. Roberts, 725 So.2d at 981-82.
The State has responded to the father’s argument by contending that the father has the ability to maintain his previous income level, and, therefore, it contends that the trial court did not err in refusing to modify the father’s child-support obligation. The State’s argument that the father has the ability to earn the same income that he earned in 2006 is an argument asserting that the father is voluntarily underemployed. If a trial court determines that a parent is voluntarily underemployed, it may, pursuant to the child-support guidelines, impute income to that parent in determining child support. Rule 32(B)(5), Ala. R. Jud. Admin. (“If the coui't finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income; the court shall calculate child support based on that parent’s imputed income.”).
The record does not indicate whether the trial court intended to impute income to the father pursuant to Rule 32(B)(5) when it denied the father’s claim seeking a child-support modification. The trial court made no reference to the child-support guidelines, and it does not appear that it applied the guidelines in reaching its ruling. The trial court may deviate from the Rule 32, Ala. R. Jud. Admin., child-support guidelines when it makes factual findings justifying that deviation. State ex rel. Golden v. Golden, 710 So.2d 924 (Ala.Civ.App.1998). However, there is no indication in the record that the trial court made a finding that, given the facts of this case, the application of the child-support guidelines would be “ ‘ “manifestly unjust or inequitable.” ’ ” State ex rel. Roberts v. Roberts, 725 So.2d at 981 (quoting Stewart v. Kelley, 587 So.2d 384, 385 (Ala.Civ.App.1991), quoting in turn Rule 32(A)(ii), Ala. R. Jud. Admin.).
“If the trial court fails to apply the guidelines or to present findings of fact based upon evidence before the court indicating why the guidelines were not followed, this court will reverse.” State ex rel. Roye v. Hogg, 689 So.2d 131, 133 (Ala.Civ.App.1996); State ex rel. Roberts v. Roberts, 725 So.2d at 981-82 (same). Accordingly, we reverse the child-support judgment and remand the cause to the trial court to enter a judgment in compliance with the Rule 32 child-support guidelines or containing factual findings justifying a deviation from the application of those guidelines.
REVERSED AND REMANDED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.

. Although the pleadings and orders in the record do not so reflect, the response to an inquiry by this court to the trial court clerk indicates that this matter was handled by the Family Court Division of the Calhoun Circuit Court.

. The record indicates that the father was released from incarceration after three days, but the trial court’s February 24, 2009, judgment in the contempt action specified that the father would again be incarcerated if he failed to make the required child-support payments.

. We note that the record on appeal indicates that the trial court recognized the applicability of the Alabama Rules of Juvenile Procedure to this matter. On September 27, 2006, the trial court entered an order finding a post-judgment motion filed by the father in reference to the initial, August 2006 paternity and child-support judgment to be moot because that postjudgment motion had not been filed within the 14 days allowed by the Alabama Rules of Juvenile Procedure. See Rule 1(B), Ala. R. Juv. P. (providing that a postjudgment motion in a juvenile action be filed within 14 days of the date of the entry of the judgment).

. We note that another basis for construing the father’s notice of appeal as having been taken from the child-support judgment is that the March 31, 2009, notice of appeal would not have been timely with reference to the contempt action. The father’s March 2, 2009, postjudgment motion in the contempt action was denied by operation of law 14 days later, on March 16, 2009. See Rule 1(B), Ala. R. Juv. P. (’’A postjudgment motion [in a juvenile matter] is deemed denied if not ruled on within 14 days of filing.”). The father had 14 days, or until March 30, 2009, to timely appeal the judgment in the contempt action. Rule 4(a)(1), Ala. R.App. P.