THOMPSON, Presiding Judge.
Tony Hayden Kwasigroh (“the father”) appeals from a judgment of the Madison Circuit Court (“the trial court”) that denied both the father’s petition to modify custody and child support and a counterclaim filed by Samantha Leanne Kwasi-groh (“the mother”) to modify custody and child support.
The parties were divorced on October 7, 2011. In the divorce judgment, the trial *522 court awarded the parties joint custody of their four minor children.[1] No child support was awarded to either party.
On July 29, 2013, the trial court entered a judgment that incorporated an agreement of the parties that modified the divorce judgment. In that July 29, 2013, judgment, the trial court ordered that the joint-custody award be maintained but ordered the father to pay $500 per month in child support.
On January 28, 2014, the father filed a petition seeking to modify custody, an award of child support, and to have the mother held in contempt for alleged violations of certain provisions of the previous judgments. The mother answered and counterclaimed, seeking an award of sole legal and sole physical custody of the children and a recalculation of child support. On December 22, 2014, the trial court appointed a guardian ad litem to represent the children.
The trial court received ore tenus evidence at a hearing over the course of two days in July 2015. On August 12, 2015, the trial court entered an order in which it, among other things, denied both parties’ requests for a modification of custody and ordered the parties to submit a joint ealcu-lation of the child-support arrearage owed by the father.
On August 25, 2015, the father filed a purported postjudgment motion raising arguments pertaining to, among other things, the trial court’s failure to modify child support and requesting a hearing on the motion. However, a Rule 59(e), Ala. R. Civ. P., postjudgment motion may be filed only in reference to a final judgment. Ex parte Troutman Sanders, LLP, 866 So.2d 547, 550 (Ala.2003); Malone v. Gainey, 726 So.2d 725, 725 n. 2 (Ala.Civ.App.1999). The trial court’s August 12, 2015, order did not rule on the mother’s claim for the determination of the father’s child-support arrearage, and it instead ordered that additional evidence be presented with regard to that claim.[2] Accordingly, the August 12, 2015, order was not a final judgment. Trousdale v. Tubbs, 929 So.2d 1020, 1022-23 (Ala.Civ.App.2005).
On August 27, 2015, the trial court entered an order denying the father’s purported postjudgment motion.[3] As a part of that order, the trial court ordered thfe parties to compute the father’s child-support arrearage and to submit those calculations to it. On September 3, 2015, the trial court entered an order finding that the father had a child-support arrearage in *523 the amount of $11,721.88 and entering a judgment in favor of the mother in that amount. The September 3, 2015, order, because it resolved the last of the parties’ pending claims, constituted a final judgment. Stockton v. CKPD Dev. Co., 936 So.2d 1065, 1069-70 (Ala.Civ.App.2005). The father timely appealed.
The father asserts various arguments that the trial court erred in refusing to modify his child-support obligation.[4] The record reveals the following pertinent facts.
At the time the July 29, 2013, modification judgment was entered, the father had been employed by an employer he referred to as “SAIC,” earning approximately $100,000 each year. The father lost that job in March 2014; the record does not indicate why the father lost that job.
The father was then unemployed until August 1, 2014, when he was hired as a full-time science teacher earning in the “mid thirties” each year. The father resigned that job after only three months to avoid being fired. The father stated that the incident that led to his resignation occurred when a student challenged the father to a wrestling match during class and the father agreed and wrestled the student. The father stated that the wrestling incident was a “poor choice” that resulted in his losing that teaching job.
The father testified that, after he lost the teaching job, he submitted 50 to 60 job applications during a 2-month period before he obtained a job selling generators. The father stated that he had had difficulty finding another job, and that his income had decreased, because of arrest records and mugshots that were posted online. The father blamed the mother for bringing the charges against him that resulted in the arrest records being online. One mugshot was online as a result of a charge of theft of property brought by the mother; that charge was later dismissed. The father also had been charged with domestic violence and harassment against the mother before the entry of the July 29, 2013, modification judgment; the father testified that those charges had resulted in a “not-guilty” decision after he completed “diversion.”
The father testified that he had been employed selling home standby generators since January 2015. The father’s testimony indicates that he is an independent contractor; he stated that he was paid only if and when he made sales.[5] The father submitted into evidence an exhibit that he represented indicated his income as being $7,600 between January 28, 2015, and June 12, 2015. That exhibit was a “vendor quick report,” apparently showing amounts the generator seller had paid him; several amounts were marked out on that exhibit, and a handwritten figure indicates that the amounts on that exhibit represent an income of $1,266 per month. On his CS-41 Child-Support-Obligation Income Statement/Affidavit, filed pursuant to Rule 32, Ala. R. Jud. Admin., the father represented that his income was $1,266 per month. We note that the father testified that he receives food stamps and other government>assistance benefits in the amount of $750 per month; those amounts are not included in a determination of a parent’s gross income for the purposes of determining child support. Rule 32(B)(2)(b), Ala. R. Jud. Admin.
*524 The father admitted that he has not paid child support since January 2014. The father testified that, at that time, he lost the job at which he had earned $100,000, a year, and he claimed that he had not paid child support because of a lack of income and because the children have been living with him three out of four weeks each month. The father testified that the current physical-custody arrangement is one of joint physical custody, with the parties alternating weeks when they have physical custody of the children, but that the.children stay with him when the mother is working night shifts, even if it is the mother’s week to have custody.. The father testified that the oldest child lives with the father and does not , stay overnight at the mother’s home like the other children.
The mother testified that she had been a stay-at-home mother before she became a nurse five years before the hearing in this matter, and she stated that she was considering going back to school to become a nurse practitioner. The mother testified that she had been employed at Huntsville Hospital in the cardiovascular-intensive-care unit since August 2014. She testified that she was also listed as an employee oh the payrolls of two nursing homes at which she had previously been employed. The mother explained that she occasionally saw patients at one of those nursing homes but that she rarely worked at the other.
The mother testified that she earns $21.80 per hour and that she earns approximately $3,000 per month if she works extra shifts.. She testified. that she currently worked the night shift but was trying to move to the day shift. She stated that she had already discussed changing shifts with her manager, who had just hired 24 new workers, and was told that she would receive the next day-shift position that became available. She stated that she normally worked three nights out of the week but that she keeps the weekends free so that she can spend time with the children and attend their events. The mother testified that a complaint against her was received by the nursing board from the father, who reported that the mother had stolen drugs from Huntsville Hospital.
The mother testified that she put the children on her health insurance when she started working for her current employer. The father is under a previous court order to pay 75% of the children’s uninsured medical expenses. The mother testified that one of the children needs braces and that the braces will cost $5,000 even with dental insurance. She stated that she asked the father to help her pay for the braces, but, she said, he told her that he could not afford to help. The mother testified that she has been working extra shifts to earn money to pay for the child’s braces.
After the hearing, the trial court issued an order. on July 8, 2015, requiring the children’s guardian ad litem to visit the mother’s home, which she shares with her fiancé, within 30 days and then to submit a written report to the court. In her report to the trial court, the guardian ad litem noted, in pertinent part:
“The father has not paid support as ordered, stating that he was unemployed and unable to pay. The mother has taken an overnight nursing job for higher pay. However, this makes her unable to have the children for a significant portion.of her weeks, and the children, as a result, have spent approximately 75% of their time in the father’s care.”
In her recommendations to the trial court on the issues of child support and child custody, the guardian ad litem expressed the opinion that the father should not “be rewarded for failure to pay child support, *525 thus forcing the mother to work overnights for higher pay [and] forcing the mother to relinquish the children to the father for much of her week.”[6]
We note that, during the pendency of this matter, the father failed to respond to the mother’s requests for admissions. The requests for admissions largely concerned questions pertinent to the issue of custody of the parties’ children. On October 28, 2014, the trial court entered an order granting the mother’s motion to deem admitted her requests for admissions to the father. Thus, the mother’s requests for admissions were deemed conclusively established. Rule 36, Ala. R. Civ. P. During the hearing, the mother’s attorney repeatedly objected to testimony provided by the father that contradicted those deemed admissions, and the trial court eventually gave the mother a standing objection.
The father did not seek to have the October 28, 2014, order set aside, and he made no objection to the trial court’s consideration of the deemed admissions when the hearing began.[7] However, in his testimony, the father asked the trial court to base its judgment on the ore tenus evidence presented at the hearing rather than on the deemed admissions. The record contains no indication that the trial court agreed to disregard the October 28, 2014, order regarding the mother’s requests for admissions. In his brief on appeal, the father has not addressed the effects of the October 28, 2014, order on appeal, nor has he argued that the trial court abused its discretion in entering that order. See Thomson v. Bank, 506 So.2d 1012, 1014 (Ala.Civ.App.1987) (a determination whether to deem requests for admissions admitted due to a failure to respond, or to an untimely response, is within the trial court’s discretion).
The requests for admissions that were deemed admitted by virtue of the October 28, 2014, order and that could be said to affect that part of the trial court’s judgment concerning child support established that, at the time the October 28, 2014, order was entered, the father had no basis for the allegations in his petition to modify,[8] that he had anger issues, that he was unemployed because he could not control his anger, that he had refused to seek employment, and that he could obtain employment if he obtained treatment for his anger issues.
On appeal, the father argues that the trial court erred by failing to modify his child-support obligation. The July 29, 2013, modification judgment, which the parties both sought to modify in this current action, contains a finding that the provision in that judgment ordering the father to pay $500 per month in child support was a deviation from the Rule 32, Ala. R. Jud. Admin., child-support guidelines. That July 29,2013, judgment, which incorporated an agreement of the parties, further states that both the mother and the father had agreed that the deviation *526 was “fair and equitable.” Thus, in arguing that his child-support obligation should be reduced, the father is arguing that the facts warrant a modification of the amount of child support to which he agreed in July 2013 and which constituted a deviation from the child-support guidelines.
This court has held that when the child-support judgment a party seeks to modify constituted a deviation from the Rule 32 child-support guidelines, the party seeking the modification must demonstrate that there exists a material change in the circumstances from those circumstances that resulted in the earlier deviation from the child-support guidelines. Milligan v. Milligan, 149 So.3d 623, 626 (Ala.Civ.App.2014) (“[Wjhen a trial court ratifies an agreement to deviate from the Rule 32 child-support guidelines, that agreement may be modified upon a showing of a substantial and continuing material change from the circumstances that had resulted in the initial deviation.”). In other words, the trial court could modify the father’s child-support obligation if the father demonstrated that there had been a material change in the circumstances from the circumstances that had resulted in the parties’ and the trial court’s decision to deviate from the child-support guidelines in establishing the father’s child-support obligation in the July 29, 2013, modification judgment. Jones v. Jones, 101 So.3d 798, 803 (Ala.Civ.App.2012).
We note that there exists
“a rebuttable presumption that child support should be modified when the difference between the existing child-support award and the amount determined by application of these guidelines varies more than ten percent (10%), unless the variation is due to the fact that the existing child-support award resulted from a rebuttal of the guidelines and there has been no change in the circumstances that resulted in the rebuttal of the guidelines.”
Rule 32(A)(3)(c), Ala. R. Jud. Admin, (emphasis added). Thus, the rebuttable presumption provided in Rule 32(A)(3)(c) is applicable only if the father has demonstrated a material change in the circumstances from those circumstances that resulted in the July 29, 2013, child-support determination.[9]
Accordingly, we address the father’s argument that there has been a material change in circumstances. See Duke v. Duke, 872 So.2d 153, 156-57 (Ala.Civ.App.2003).
“For the purposes of modifying child support, ‘ “[fjactors indicating a change of circumstances include a material change in the needs, conditions, and circumstances of the child.” ’ Duke [v. Duke ], 872 So.2d [153] at 156 [ (Ala.Civ.App.2003) ] (quoting State ex rel. Shellhouse v. Bentley, 666 So.2d 517, 518 (Ala.Civ.App.1995)). The parent seeking the modification bears the burden of proof. Cunningham v. Cunningham, 641 So.2d 807, 809 (Ala.Civ.App.1994).
*527 “ “Whether circumstances justifying modification of support exist is a matter within the trial court’s discretion. [Cunningham v. Cunningham, 641 So.2d 807 (Ala.Civ.App.1994).] We will not disturb the trial court’s decision on appeal unless there is a showing that the trial court abused that discretion or that the judgment is plainly and palpably wrong. Id.; Douglass v. Douglass, 669 So.2d 928, 980 (Ala.Civ.App.1995).’ ”
Milligan v. Milligan, 149 So.3d at 626 (quoting Romano v. Romano, 703 So.2d 374, 375 (Ala.Civ.App.1997)).
The father argues that his income has been reduced dramatically since the entry of the July 29, 2013, modification judgment. We agree that the record demonstrates that the father’s income has decreased significantly from the $100,000-a-year salary that he was earning at the time of the July 29, 2013, modification judgment. Such a decrease in income has been held to be a material change in circumstances. H.J.T. v. State ex rel. M.S.M., 34 So.3d 1276, 1280 (Ala.Civ.App.2009). “However, the fact that a change in circumstances has occurred does not necessarily end the inquiry and require that the father’s child-support obligation be modified.” Id. In this case, the trial court determined that the father’s reduction in income was a result of his being voluntarily underemployed. In its August 27, 2015, order addressing the father’s purported postjudgment motion, the trial court found:
“[The father] seeks to have the court relieve him of his obligation to pay child support.
“The record herein amply establishes that [the father] is underemployed, as the result of his own misconduct. Furthermore, [the father’s] refusal to pay his child support, coupled with his suggestion that his ex-wife should provide all of the support for his four children and pay HIM child support as well, causes the court to question whether [the father] possesses the good judgment and work ethic necessary to successfully parent the minor children of the parties.”
(Capitalization in original.)
The determination of whether a parent with a child-support obligation is voluntarily unemployed or underemployed is within the trial court’s discretion. Griggs v. Griggs, 638 So.2d 916, 918 (Ala.Civ.App.1994). The evidence in this case indicates that, after the father lost his job at which he earned $100,000 per year, he accepted employment at which he earned approximately $35,000 annually as a teacher. However, the father was forced to resign from that employment after only three months to avoid termination of his employment because he engaged in wrestling with a student in a classroom. The father’s deemed admissions, in response to the mother’s requests for admissions, establish that the father’s anger issues have impacted the father’s employment prospects. Thus, although the father argues in his brief submitted to this court that the trial court erred in determining that he was voluntarily underemployed, we conclude that the evidence supports the trial court’s determination that the father was capable of earning more income. See Bittinger v. Byrom, 65 So.3d 927 (Ala.Civ.App.2010) (affirming a finding of voluntary underemployment when the trial court based its determination on the parent’s probable earning level based on his recent work history); Rule 32(B)(1), Ala. R. Jud. Admin, (defining “income” in part, as “the actual gross income the parent has the ability to earn if the parent is ... underemployed”).
Rule 32 provides, in part:
*528 “ Unemployment; Underemployment. If the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income; the court shall calculate child support based on that parent’s imputed income. In determining the amount of income to be imputed to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earning level of that parent, based on that parent’s recent work history, education, and occupational qualifications, and on the prevailing job opportunities and earning levels in the community....”
Rule 32(B)(5), Ala. R. Jud. Admin, (emphasis added).
In this case, the trial court did not make any findings imputing income to the father or specifying the amount of income it might have imputed to him. The Rule 32 child-support guidelines and our case-law require that the trial court impute to the father the amount of income it determines he is capable of earning and to calculate child support pursuant to the guidelines based on that amount of income. Rule 32(B)(5); Herboso v. Herboso, 881 So.2d 454, 457 (Ala.Civ.App.2003); and Van Houten v. Van Houten, 895 So.2d 982, 986-87 (Ala.Civ.App.2004). We note that Rule 32(B)(9), Ala. R. Jud. Admin., addresses the determination of child support when parents share joint physical custody of the children “unless the court determines, pursuant to other provisions of this rule, that it should deviate from the guidelines.” Rule 32(B)(9)(c), Ala. R. Jud. Admin.; see also Rule 32(A)(1), Ala. R. Jud. Admin, (setting forth circumstances in which a trial court might deviate from the child-support guidelines).
In H.J.T. v. State ex rel. M.S.M., 34 So.3d at 1281, the State responded to the argument of the father in that case asserting that the trial court in that case had erred in denying the father’s claim to modify child support by arguing that he had “the ability to maintain his previous income level”; in other words, the State maintained that the father was voluntarily underemployed. This court reversed the trial court’s judgment and remanded the case for the trial court to apply the Rule 32 child-support guidelines or to make factual findings explaining its determination that the facts warranted a deviation from the guidelines, stating:
“The record does not indicate whether the trial court intended to impute income to the father pursuant to Rule 32(B)(5) when it denied the father’s claim seeking a child-support modification. The trial court made no reference to the child-support guidelines, and it does not appear that it applied the guidelines in reaching its ruling. The trial court may deviate from the Rule 32, Ala. R. Jud. Admin., child-support guidelines when it makes factual findings justifying that deviation. State ex rel. Golden v. Golden, 710 So.2d 924 (Ala.Civ.App.1998). However, there is no indication in the record that the trial court made a finding that, given the facts of this case, the application of the child-support guidelines would be ‘ “ ‘manifestly unjust or inequitable.’ ” ’ State ex rel. Roberts v. Roberts, 725 So.2d [980] at 981 [ (Ala.Civ.App.1998) ] (quoting Stewart v. Kelley, 587 So.2d 384, 385 (Ala.Civ.App.1991), quoting in turn Rule 32(A)(ii), Ala. R. Jud. Admin.).
“ ‘If the trial court fails to apply the guidelines or to present findings of fact based upon evidence before the court indicating why the guidelines were not followed, this court will reverse.’ State ex rel. Roye v. Hogg, 689 So.2d 131, 133 *529 (Ala.Civ.App.1996); State ex rel. Roberts v. Roberts, 725 So.2d at 981-82 (same).”
H.J.T. v. State ex rel. M.S.M., 34 So.3d at 1281.
The trial court in this case determined that the father was voluntarily underemployed, and the evidence supports that determination. Accordingly, we reverse the trial court’s judgment insofar as it addresses the issue of child support and remand this cause for the trial court to make findings of fact regarding whether to impute income to the father and, if so, what level of income the father is capable of earning. The trial court should assess child support in compliance with the Rule 32 child-support guidelines or specify, if necessary, any reasons, including that the father is voluntarily underemployed, that justify a deviation from the application of those guidelines. H.J.T. v. State ex rel. M.S.M., supra.
REVERSED AND REMANDED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. For the purposes of this opinion, we have characterized the custodial awards as those awards are properly defined under § 30-3-151, Ala.Code 1975.

. The specific language of the mother’s counterclaim did not seek a determination of the father’s child-support arrearage, but it is clear that that claim was tried by the implied consent of the parties pursuant to Rule 15(b), Ala. R. Civ. P.

. We note that the father has argued, as one of luis issues on appeal, that the trial court erred in denying his August 25, 2015, "post-judgment” motion without granting his request for a hearing on that motion. The father cites Rule 59(g), Ala. R. Civ. P., and Kitchens v. Maye, 623 So.2d 1082 (Ala.1993), in support of his argument that it can be error for a trial court to fail to conduct a hearing requested in a Rule 59 postjudgment motion. However, because the father’s August 25, 2015, motion was not taken from a final judgment, it was not a valid postjudgment motion filed pursuant to Rule 59, Ala. R. Civ. P. Ex parte Troutman Sanders, LLP, supra; Malone v. Gainey, supra. Therefore, Rule 59(g) does not provide support for the father’s argument that he was entitled to a hearing on his August 25, 2015, motion. The father has not cited any other authority in support of his argument that the trial court erred in failing to conduct a hearing on his August 25, 2015, motion. Accordingly, he has failed to demonstrate error with regard to this issue.

. Because neither party has appealed the trial court’s ruling on their claims seeking a custody modification, we do not address the parts of the trial court's orders and judgment pertaining to those claims.

. The father’s testimony was that he was a "1099 employee.”

. The guardian ad litem noted that the mother had applied to be transferred to the day shift and that she was engaged to be married and that her fiancé could assist her in taking care of the children when she continued to work nights pending her transfer to the day shift.

. This opinion should not be interpreted as indicating that such an objection would be proper.

.We note that, in his petition, the father sought a change in custody and an award of child support. He did not plead a claim seeking a modification of child support if the trial court denied his custody-modification claim. However, the parties and the trial court appear to have treated such a claim as having been tried by the implied consent of the parties pursuant to Rule 15(b), Ala. R. Civ. P.

. The parties did not address whether the application of the child-support guidelines would result in a 10% variance in the father’s child-support obligation. We note that the father submitted into evidence a child-support calculation, based on his claim of earning only $1,266 per month, that resulted in a determination that the mother should pay $938 per month toward the children’s support and the father should pay $483 per month. However, that calculation was clearly based on an assumption that one of the parties would receive sole physical custody of the children and the other would receive an award of visitation. The trial court, however, left in place the award of joint custody of the children.