DONALDSON, Judge.
Nathian Hossley ("the former husband") appeals from a judgment of the Baldwin Circuit Court ("the trial court") entered in postdivorce proceedings between himself and Sarah Hossley ("the former wife"). The judgment was entered in one of two consolidated cases. For the reasons discussed herein, we dismiss the appeal as having been taken from a nonfinal judgment.
Facts and Procedural History
On November 16, 2015, the parties entered into a written agreement settling their divorce proceedings; that agreement was incorporated into a judgment of the trial court in case no. DR-15-900431.01 ("the divorce judgment"). Among other things, the former husband was ordered to pay $2,000 per month in child support for one of the parties' minor children, to be responsible for the children's current (and future) college-education expenses, and to pay $4,500 per month in periodic alimony to the former wife.[1]
On June 10, 2016, the former husband filed a petition in the trial court seeking, among other things, to modify his alimony and child-support obligations in the divorce judgment. The former husband's petition to modify was docketed as case no. DR-15-900431.02 ("the .02 action").
The former wife filed a single pleading that encompassed an answer denying the former husband's allegations in his petition and a counterpetition for contempt. The former wife's pleading was docketed by the trial-court clerk as case no. DR-15-900431.03 ("the .03 action"). In her pleading, the former wife asserted that the former husband had, among other things, refused *895 to pay alimony, child support, and college expenses for the oldest child since the entry of the divorce judgment and asked that the former husband be incarcerated until he posted a $20,000 cash bond payable to the former wife.
On September 9, 2016, the former wife filed a motion seeking to consolidate the .02 action and the .03 action for trial; that motion was granted by the entry of the following order of the trial court: "MOTION FOR CONSOLIDATION filed by [the former wife] is hereby GRANTED. Case reset to January 6, 2017 ...." The order of consolidation did not direct the dismissal of either the .02 action or the .03 action, and the record indicates that both the .02 action and the .03 action remained pending after the order of consolidation.
On April 10, 2017, the trial court held a trial on the former husband's and the former wife's petitions. The former husband failed to appear at the trial, but he was represented by counsel who was present. Counsel for the former wife asked the trial court to dismiss the former husband's petition, based on his failure to appear and prosecute his case. The trial court orally indicated that it would grant that motion, without objection from the former husband's counsel. Counsel for the former wife proceeded to take testimony from the former wife on her petition for contempt.
The former wife testified that she and the former husband had entered into a settlement agreement in November 2015 in which the former husband had agreed, among other things, that he would pay $4,500 per month in alimony, $2,000 per month in child support, and college-tuition expenses for both children, only one of whom was enrolled in college at the time the parties entered into the agreement. The former husband had also agreed to direct that $700 of his monthly military-retirement funds be made payable to the former wife and to pay all debts associated with a construction business owned by the parties. The former husband agreed to quitclaim his interest in a condominium shared by the parties and to bring the mortgage on that property current by December 1, 2015. The former husband also agreed to waive any right to the former wife's $150,000 equity that was being held in escrow from the sale of a Baton Rouge home.
The former wife testified that, although the former husband had paid her a total of $29,000 since the entry of the divorce judgment, he had refused to comply with all of the provisions of the settlement agreement outlined above and had not paid the required amount of child support. The former wife also testified that the former husband had forged her name to certain documents that allowed the $150,000 escrow funds to be used to satisfy his financial obligations in a criminal case.
The former wife testified that the former husband had also received $130,000 from a Louisiana land trust that should have been paid to her, that he had received an insurance-proceeds check for $3,000, and that he had received $2,000 from their real-estate agent's escrow account. The former wife testified that the former husband had also received $50,000 in proceeds in settlement of claims related to an oil spill in the Gulf of Mexico.
The former wife testified that the former husband was currently driving a 2015 Range Rover automobile and that he had purchased a Porsche automobile in March 2017-the month before the trial. According to the former wife, the former husband had "literally lived inside the casinos" in Gulfport, Mississippi, since 2014. The former wife testified that the former husband had received (or had wrongfully taken) approximately $490,000 since the entry of *896 the divorce judgment but had paid her only $29,000. The former wife testified:
"[Counsel for the former wife]: Are you seeking-are you asking the court to enter an order establishing an amount of child support that your husband should have paid you thus far?
"[The former wife]: Yes.
"[Counsel for the former wife]: And are you asking the court to enter an order establishing the amount of money that your husband has not paid to you as ordered for child support?
"[The former wife]: Correct.
"[Counsel for the former wife]: Are you asking that the court compute interest at the maximum amount of law and add that to the amounts of money or the principal that your husband currently owes to you?
"THE COURT: You mean that somebody else compute that and give the number to me to enter an order, right?
"[Counsel for the former wife]: An officer of the court can certainly do that.
"THE COURT: ... Go ahead."
At the conclusion of the trial, the trial court stated, without objection or comment from the former husband's counsel:
"Okay. I'll grant the relief, but I don't know how much good it will do with regard to the jailing him with a cash bond. I mean, I understand it's for monies already due or already past due. I will do it, but I just-I don't know how much success you can hope to see."
On April 18, 2017, before the entry of a judgment, the former husband filed an unverified motion entitled "Motion to Set Aside Default Judgment." In his motion, the former husband asserted that he had believed that the trial was scheduled for April 11, rather than April 10, and that he wanted "the opportunity to be present, defend against the [former wife's] accusations and to present testimony in his defense."
On May 30, 2017, before the entry of a judgment, the trial court held a hearing on the former husband's motion, at which the former husband testified that he had not been aware of the trial date.
On May 30, 2017, after the hearing, the trial court entered an order denying the former husband's motion. That same day, the trial court entered the following judgment in the .02 action that was entitled "Proposed Order":
"The matter having come before the Court on April 1[0], 2017, [the former wife] having appeared with counsel, [the former husband] having failed to appear, and this matter having been set for final hearing on [the former husband's] Petition to Modify and on [the former wife's] Petition for [contempt], and following testimony of the [former wife] in open Court, the following is ordered:
"1. [The former husband's] Petition to Modify is denied;
"2. [The former wife's] Petition for [contempt] is granted;
"3. [The former husband] is ordered to be JAILED IMMEDIATELY, and held until a cash bond of $20,000.00 shall post;
"4. [The former husband] is ordered to pay [the former] wife's attorney's fees in the amount of $5,000.00, and said order shall convert to a judgment."
(Capitalization in original.)
There is no indication in the record that the trial court was presented with a calculation of the amounts owed by the former husband for child support. On June 29, 2017, the former husband filed a motion in the .02 action seeking a new trial or to alter, amend, or vacate the judgment or, alternatively, to set aside the default judgment. On July 24, 2017, after a hearing, *897 the trial court entered an order in the .02 action denying the former husband's motion.[2] On September 1, 2017, the former husband filed a notice of appeal to this court in the .02 action.
Discussion
On appeal, the former husband argues that he was not in default, that the trial court should not have entered a default judgment against him, that the trial court should have granted his motion to set aside the default judgment, and that the award of attorney's fees to the former wife was excessive.
At the outset, we must determine from what action the former husband has actually appealed and whether he has appealed from a final judgment. " 'Generally, an appeal will lie only from a final judgment, and if there is not a final judgment then this court is without jurisdiction to hear the appeal.' " Moore v. Strickland, 54 So.3d 906, 908 (Ala. Civ. App. 2010) (quoting Sexton v. Sexton, 42 So.3d 1280, 1282 (Ala. Civ. App. 2010) ). The record contains documents from only the .02 action, the former husband's docketing statement references only the .02 action, the former husband states on his notice of appeal that he appeals from the order denying his motion to set aside the default judgment, and his appellate brief references only the .02 action. An appellant's designation of a judgment or order on his notice of appeal does not limit the scope of appellate review, see Rule 3(a)(c), Ala. R. App. P., and this court may treat a notice of appeal that is filed in one consolidated case as being effective as to the other consolidated case when the intention to appeal the judgments in both cases is clear, see R.J.G. v. S.S.W., 42 So.3d 747, 751 n. 2 (Ala. Civ. App. 2009). Although the .02 action and the .03 action were consolidated, neither action was dismissed and "each action retains its separate identity so as to require the entry of separate judgments." Casey v. Casey, 109 So.3d 199, 204 (Ala. Civ. App. 2012).
It is apparent that there has not been an adjudication of the claims of the former wife against the former husband related to his unpaid child-support and alimony obligations. We asked the parties to submit letter briefs addressing whether the former husband has appealed from the judgment in the .03 action and, if so, whether the judgment is final. The former wife, without the assistance of counsel, filed a letter brief in which she asserted, among other things, that the former husband has appealed from a final judgment, but she did not provide any analysis to support that conclusion. In his letter brief, the former husband asserted that the .03 action was consolidated with the .02 action, and that no further pleadings or orders were entered in the .03 action. The former husband attached the case-action summary from the .03 action, which appears to contain an entry by the clerk on September 12, 2016, stating: "Disposed by (Other) on 09/09/2016." We note that the consolidation order was entered by the trial court on September 9, 2016, but the order did not direct the disposition of the .03 action, and there is no indication that the May 30, 2017, judgment was entered in the .03 action. Each consolidated " ' "action retains its separate identity and thus requires the entry of a separate judgment." League v. McDonald, 355 So.2d 695, 697 (Ala. 1978).' " R.J.G. v. S.S.W., 42 So.3d 747, 753 (Ala. Civ. App. 2009) (quoting H.J.T. v. State ex rel. M.S.M., 34 So.3d 1276, 1278 (Ala. Civ. App. 2009) )(emphasis omitted).
In Hanner v. Metro Bank & Protective Life Insurance Co., 952 So.2d 1056, 1061 (Ala. 2006), the supreme court held *898 that "a trial court must certify a judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., before a judgment on fewer than all the claims in consolidated actions can be appealed." In this case, rather than dismissing the appeal, we remanded the cause to the trial court to determine whether to certify the judgment in the .02 action as final pursuant to Rule 54(b), Ala. R. Civ. P. On remand, the trial court chose not to certify the judgment in the .02 action as final, but it entered what purports to be a final judgment in the .03 action granting the former wife's contempt petition and ordering the former husband to pay the former wife's attorney's fees. That order, however, does not resolve all of the former wife's claims in her petition for contempt; specifically, the order does not address the former wife's claims seeking the determination of, and an order requiring the payment of, the former husband's alimony arrearage and child-support arrearage, plus interest, or her claim for contempt. Because the order in the .03 action does not address all of the former wife's claims, the order is not final and will not support an appeal. See Clay v. Clay, 255 So. 3d 238 (Ala. Civ. App. 2017) (holding that an order that failed to calculate a child-support arrearage and interest owed was nonfinal). See also McCarron v. McCarron, 213 So.3d 591, 593 (Ala. Civ. App. 2016) (holding that an order that failed to conclusively determine the husband's alimony arrearage was nonfinal); and Palughi v. Dow, 659 So.2d 112, 113 (Ala. 1995) ("An appeal will ordinarily lie only from a final judgment; that is, a judgment that conclusively determines the issues before the court and ascertains and declares the rights of the parties.").
We cannot waive the jurisdictional deficiency in this appeal. Therefore, because the order in the .03 action is not final, and because the .02 action and the .03 action were consolidated, we are required to dismiss the appeal as having been taken from a nonfinal judgment. See Hanner, 952 So.2d at 1061.
APPEAL DISMISSED.
Thompson, P.J., and Pittman and Moore, JJ., concur.
Thomas, J., concurs in the result, without writing.

Although the parties had two minor children, one of those children was already attending college at the time the parties entered into their settlement agreement. As a result, the parties agreed that the former husband would not pay child support related to that child.

A transcript of that hearing is not contained in the record.